IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF

WASHINGTON

| | |
|---|---|
| DARYL ROGERS, | Case No.: 3:21-cv-05011-BJR-TLF |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | (Civil Rights, Jury Trial Demanded) |
| WASHINGTON DEPARTMENT OF | |
| CORRECTIONS et. al., | |
| Defendants. | |

COMES NOW Plaintiff Daryl Rogers, for the causes of action against the above-named

Defendants, alleges and avers as follows:

## INTRODUCTION

1.      Plaintiff Daryl Rogers is currently an inmate in the G-unit of the Stafford Creek

Corrections Center ("SCCC") in Aberdeen, Washington. Plaintiff brings this Complaint for

declaratory relief and damages against defendants in their individual and official capacities. Each

defendant individually and collectively has caused plaintiff to suffer deprivation of his civil,

statutory, and constitutional rights, permanent physical injury, and prolonged physical and

emotional distress.

## JURISDICTION AND VENUE

2.     Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331 (federal question jurisdiction) for relief from detention that violates plaintiff's Eighth Amendment rights under the U.S. Constitution.

3.     This Court has subject matter jurisdiction over these claims pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201-02 (authority to provide declatory and other necessary and proper relief), and based on the Court's inherent equitable powers.

4.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 2241 (d) because at all times relevant to the unlawful acts and practices alleged herein, plaintiff was housed as an inmate at SCCC, which is in Aberdeen, Washington, owned and operated by the Defendant Washington State Department of Corrections ("DOC"), which is headquarted in Olympia, Washington. United States District Court for the Western District of Washington is therefore the appropriate venue for this action.

5.     Venue is proper pursuant to 28 U.S.C. § 1391 (e)(1)(B) because all of the events or omissions giving rise to plaintiff's claims occurred in this district.

## PARTIES

6.     Plaintiff Daryl Rogers is an adult male inmate currently incarcerated in SCCC's G-unit. At all times relevant hereto, plaintiff was housed in SCCC's G-unit which is owned and operated by the Washington State Department of Corrections.

7.      Defendant State of Washington is and was at all times relevant hereto the employer of all other defendants and the public entity that has complete control over plaintiff because he is housed in its prison system.

8.      Defendant Washington State Department of Corrections ("DOC") is an agency of the State of Washington and is a public entity that has complete control over plaintiff because he is housed in its prison system.

9.      Defendant Stafford Creek Corrections Center ("SCCC") is a facility of DOC and is a public entity that has complete control over plaintiff because he is housed in its G-unit.

10.      Defendant Herrington was at all times relevant hereto the Facility Medical Director ("FMD") at SCCC.

11.      Defendant Harder was at all times relevant hereto a Medical Assistant ("MA") at SCCC.

12.      Defendant Kenney was at all times relevant hereto a Doctor ("DR") at SCCC.

13.      Defendant Clift is and was at all times relevant hereto an Assistant Cook ("AC") at SCCC.

14.      Defendant Helberg is and was at all times relevant hereto a Food Manager 1 ("FM1") at SCCC.

15.      Defendant Montour was at all times relevant hereto a Corrections Officer ("C/O") at SCCC.

16.      Defendant John Doe is and was at all times relevant hereto a Lieutenant ("LT") at SCCC.

17.      Defendant Jolly is and was at all times relevant hereto a Custody Unit Supervisor ("CUS") at SCCC in G-unit.

1       18.     Defendant Bohan was at all times relevant hereto a Custody Program Manager

2    ("CPM") at SCCC.

3       19.     Defendant Haynes is and was at all times relevant hereto the Superintendent of

4    SCCC.

5       20.     Defendant Cardwell was at all times relevant hereto the Superintendent Secretary

6    of SCCC.

7       21.     Defendant Schreiber was at all times relevant hereto the ADA coordinator at

8    SCCC.

9       22.     Defendant Dahne is and was at all times relevant hereto a Grievance Coordinator

10   ("GC") at SCCC.

11      23.     Defendant K. Taylor was at all times relevant hereto a Health Services Manager 2

12   ("HSM2") at SCCC.

13      24.     Defendant T. Taylor was at all times relevant hereto a Health Services Manager 2

14   ("HSM2") at SCCC.

15      25.     Defendant Fredrick was at all times relevant hereto a Grievance Program

16   Manager ("GPM") at DOC.

17      26.     Defendant Parris was at all times relevant hereto a Health Services Manager 2

18   ("HSM2") at SCCC.

19      27.     Defendant Evans was at all times relevant hereto a Health Services Administrator

20   ("HSA") at SCCC.

21      28.     Defendant Van Ogle was at all times relevant hereto the Associate Superintendent

22   at SCCC.

1    29.    Defendant Mainio is and was at all times relevant hereto a Captain ("CPT") at

2  SCCC.

3    30.    Defendant Burkett is and was at all times relevant hereto a Captain Secretary at

4  SCCC.

5    31.    Defendant Sinclair was at all times relevant hereto the DOC secretary.

6    32.    Defendant Light is and was at all times relevant hereto a Certified Physician's

7  Assistant ("PA-C") at SCCC.

8    33.    Defendant Klemme is and was at all times relevant hereto the DOC ADA

9  Compliance Manager.

10    34.    Defendant Young was at all times relevant hereto a Doctor ("DR") at SCCC.

11    35.    Defendant Russell is and was at all times relevant hereto a Deputy Director

12  ("DD") of DOC.

13    36.    Defendant Fithian is and was at all times relevant hereto Deputy Director ("DD")

14  of DOC.

15    37.    Defendant Flynn is and was at all times relevant hereto a Correctional Program

16  Administrator ("CPA") at SCCC.

17    38.    Defendant Parker is and was at all times relevant hereto an employee at DOC title

18  unknown.

19    39.    Defendant Reno is and was at all times relevant hereto an employee at DOC title

20  unknown.

21    40.    Defendant John Doe was at all times relevant hereto Chief Medical Officer

22  ("CMO") of DOC.

*/June*

1      41.    Defendant John Doe was at all times relevant hereto Assistant Chief Medical

2  Officer ("ACMO") of DOC.

3      42.    Defendant Jane Doe was at all times relevant hereto female medical staff at

4  SCCC.

5      43.    Defendant John Doe was at all times relevant hereto Corrections Officer 1

6  ("C/O1") at SCCC.

7      44.    Defendant John Doe was at all times relevant hereto Corrections Officer 2

8  ("C/O2") at SCCC.

9      45.    Defendant John Doe was at all times relevant hereto Corrections Officer 3

10  ("C/O3") at SCCC.

11      46.    Each defendant is, and at all times herein mentioned was acting under color of

12  law and was an agent of the State of Washington and acting within the course and scope of their

13  employment with that entity in causing the harm as herein alleged.

14                        **ADMINISTRATIVE PROCEEDINGS**

15      47.    Plaintiff has exhausted all possible grievances and pursued all administrative

16  remedies which were made available to him regarding the events and claims herein.

17                        **STATEMENT OF FACTS**

18      48.    Plaintiff Daryl Rogers suffered a serious neck injury in 2018. The neck injury

19  requires him to wear a neck brace at all times and severely limits what he can do.

20      49.    On May 28, 2019, while at Coyote Ridge Corrections Center (CRCC), the

21  plaintiff was issued a Health Status Report (HSR) that allowed him to "pick up clam shell meals

22  at mainline and return to unit to eat and cell." This was issued due to plaintiff's head and neck

1   significantly leaning left making it both very painful and a choking hazard for plaintiff to eat

2   without back support and the CRCC dining hall does not have seats with backs.

3       50.     On July 1, 2019 plaintiff's "meals HSR" was renewed stating "may eat mainline

4   meals in cell." This "meals HSR" expired October 1, 2019. On July 25, 2019, plaintiff was

5   transferred from CRCC to Washington Corrections Center (WCC) in transport to Stafford Creek

6   Corrections Center (SCCC). While at WCC plaintiffs "meals HSR" was honored.

7       51.     On July 29, 2019 plaintiff was transferred to SCCC. Upon arrival at SCCC

8   plaintiff's "meals HSR" was rescinded by Dr. Herrington without examining or ever seeing

9   plaintiff. Dr. Herrington did not inform plaintiffs of this removal of his "meals HSR."

10      52.     On July 31, 2019 while at dinner main line plaintiff was informed by an

11  Corrections Officer 1 (C/O1) John Doe that his "meals HSR" was not active. Plaintiff showed

12  the C/O a copy of his "meals HSR" issued on July 1, 2019. The C/O informed him to take it up

13  with medical and denied plaintiff from taking his meal back to his cell. Plaintiff returned to his

14  unit without his meal and sent a medical kite explaining why his "meals HSR" was medically

15  necessary and asking that it be reissued.

16      53.     On August 2, 2019 plaintiff attended a medical callout where he was not seen by a

17  provider, but was informed by female medical staff member Jane Doe that his meals HSR was

18  removed. When plaintiff asked why, this medical staff member told him SCCC does not allow

19  meals in cells.

20      54.     Later on August 2, 2019 plaintiff received of response to his July 31 2019 medical

21  kite from T. Harder stating the "meals HSR" was discontinued by R. Herrington, MD, FMD, that

22  the "meals HSR" was not medically necessary, and that the facility cannot accommodate this

23  HSR. Plaintiff also received a reverse medical kite from Dr. Herrington stating "Stafford Creek

1    cannot accommodate the HSR that allows you to take your meals in your cell. I have

2    discontinued this." Plaintiff in an attempt to explain to Dr. Herrington - who had never seen or

3    examined him - why the "meals HSR" was medically necessary, continued dialogue with Dr.

4    Herrington through medical kite. This ended in the denial of plaintiff's "meals HSR" and

5    ultimately the denial of any meals that were not allowed in plaintiff's cell.

6        55.    On September 12, 2019 plaintiff attended a medical callout and was seen by a

7    provider for the first time since arriving at SCCC. Plaintiff was seen by Dr. Kenney who found

8    plaintiff's "meals HSR" medically necessary and reissued it.

9        56.    On September 14, 2019, while at lunch main line, AC Clift a non-medical and

10   non-custody kitchen staff member seized plaintiff's newly issued "meals HSR." Plaintiff would

11   inquire as to why his "meals HSR" was being seized and was told by AC Clift that it was not

12   valid, even though it was issued on September 12, 2019 and expired February 10, 2020. AC Clift

13   would inform plaintiff she had been given authority to seize plaintiff's "meals HSR" by FM1

14   Helberg, another non-medical and non-custody kitchen staff member. Plaintiff requested to

15   speak with FM1 Helberg and was denied by AC Clift and C/O2 John Doe standing by, who told

16   plaintiff he didn't want to deal with it and to go to his unit to figure it out. Plaintiff complied.

17   Upon return to his unit he requested his pod officer, C/O Montour, radio him to go speak with

18   FMI Helberg, but was denied.

19       57.    Later on September 14, 2019 plaintiff went to dinner main line using a second

20   copy of his "meals HSR" and was stopped on his way out of the dining hall by C/O Montour,

21   who was now working in the dining hall. C/O Montour called LT John Doe to help prevent the

22   plaintiff from taking his meal back to his cell. Plaintiff showed both C/O Montour and the LT his

23   valid "meals HSR." LT John Doe and C/O Montour forced the plaintiff to medical, where his

1  "meals HSR" was confirmed to be active and valid. Upon being given this information LT John

2  Doe and C/O Montour ordered the plaintiff to not use his "meals HSR" until Dr. Kenney

3  returned from his weekend. The plaintiff protested and was told that if he used his active, valid

4  "meals HSR" he would be infracted.

5      58.     Plaintiff returned to his unit and sent OMNI kiosk messages to CUS Jolly, CPM

6  Bohan, an Superintendent Haynes in attempts to get the issue resolved.

7      59.     On September 17, 2019 plaintiff was called to medical for an unscheduled

8  appointment with Dr. Kenney, where Dr. Kenney would remove the "meals HSR" that he found

9  medically necessary five days earlier.

10     60.     Later on September 17, 2019 plaintiff received an OMNI kiosk message from M.

11  Cardwell on behalf of Superintendent Haynes accusing plaintiff of forging the "meals HSR."

12     61.     On September 18, 2019 plaintiff sent OMNI kiosk messages to ADA Coordinator

13  Schreiber and GC Dahne in further attempt to resolve the issue, but received no helpful

14  responses from AA3 Rehak on behalf of ADA Coordinator Schreiber, or no responses at all.

15     62.     On September 25, 2019 plaintiff filed an emergency grievance on the all

16  retaliatory removal of his "meals HSR," which was not processed as an emergency grievance by

17  C/O3 John Doe or the grievance team as required by DOC Offender Grievance Manual (OGM).

18  The grievance was issued on October 18, 2019 due date.

19     63.     On October 28, 2019 after sending OMNI kiosk messages informing grievance

20  staff of the missed grievance deadline, plaintiff receive a 20 day extension of time for his

21  grievance. The extension of time pushed the grievance deadline to November 15, 2019 which

22  was also not met.

1    64.    On November 20, 2019 plaintiff filed an appeal to level 2 of his "meals HSR"

2  grievance, in accordance with the DOC OGM.

3    65.    On December 3, 2019 plaintiff sent OMNI kiosk messages to CUS Jolly, CPM

4  Bohan and Superintendent Haynes informing them that he filed a level 2 appeal to his "meals

5  HSR" grievance and asking each of them to ensure that his level 2 appeal gets investigated.

6    66.    Also on December 3, 2019 plaintiff sent multiple OMNI kiosk messages to GC

7  Dahne asking for a copy of his handwritten level 2 appeal grievant copy of his "meals HSR"

8  grievance.

9    67.    On December 6, 2019 plaintiff received an Omni kiosk message from the

10  grievance department informing him that his level 2 grievance had been received. He again

11  requested a copy of the hand written grievance, but was never issued his grievant copy.

12    68.    On December 18, 2019 plaintiff was interviewed by HSM2 Taylor for what he

13  was told was his level 2 appeal.

14    69.    On December 20, 2019 plaintiff's level 1 grievance was responded to by HSM1

15  Taylor and signed off by GC Dahne stating plaintiff's "meals HSR" was not medically

16  necessary.

17    70.    After plaintiff received a response on his level 1 grievance on December 20, 2019

18  GC Dahne informed him his November 20, 2019 appeal to level 2 would not be processed.

19    71.    On December 29, 2019 plaintiff filed an appeal to level 3 of his "meals HSR"

20  grievance, in accordance with the DOC OGM.        .

21    72.    On January 7, 2020 plaintiff received a "not accepted" response to his level 3

22  appeal of his "meals HSR" grievance from GC Dahne. Plaintiff would submit multiple additional

1    level 3 appeals of his "meals HSR" grievance, and on January 9, 2020 his level 3 appeal was

2    accepted as a level 2 appeal. The grievance appeal was issued a due date of February 14, 2020.

3         73.    On February 14, 2020 plaintiff received a 30 day extension of time for his

4    grievance. This extension of time extended the grievance deadline to March 30, 2020. Plaintiff

5    again appealed to level 3 due to the excessive extensions of time, and was responded to by GC

6    Dahne telling him to write the Grievance Program Manager (GPM). Plaintiff wrote a letter to the

7    GPM, that was received by GPM Frederick. GPM Frederick responded with a letter allowing the

8    excessive extensions of time.

9         74.    On April 1, 2020 plaintiff's level 2 grievance was responded to by HSM2 Parris

10   and signed off by HSA Evans again denying plaintiff his "meals HSR."

11        75.    On April 3, 2020 plaintiff filed another appeal to level 3 of his "meals HSR"

12   grievance, in accordance with the DOC OGM. Plaintiff never received a grievant copy or a

13   response to his Level 3 appeal of his grievance.

14        76.    While waiting on a response to his Level 3 grievance, plaintiff sent OMNI kiosk

15   messages to Associate Superintendent Van Ogle and CPT Mainio regarding his "meals HSR"

16   and eating meals. These OMNI kiosk messages were responded to by Associate Superintendent

17   Van Ogle and AA3 Burkett, on behalf of CPT Mainio, dismissing plaintiffs issues.

18        77.    On May 6, 2020 while attending Limited Mobility Gym, plaintiff spoke with

19   DOC Secretary Sinclair and Superintendent Haynes informing them that plaintiff had not been

20   eating and explaining why he needs his "meals HSR" to eat. Secretary Sinclair responded to

21   plaintiff by dismissing his issues and telling him that it was not important whether plaintiff ate or

22   not.

78.    On May 20, 2020  plaintiff attended a medical callout with PA-C Light where he requested his "meals HSR" be reissued, which PA-C light denied.

79.    On May 29, 2020 plaintiff was issued an Accommodation Status Report (ASR) for a wheelchair to eat his meals as an alternative to his "meals HSR." This ASR was issued by DOC ADA Compliance Manager Klemme at the request of PA-C light.

80.    Although plaintiff was issued an ASR for a wheelchair, he never actually received a wheelchair even upon multiple requests. Due to not being issued the wheelchair, which he had an ASR for, plaintiff filed a grievance regarding being denied a wheelchair, that has still not been responded to.

81.    On June 17, 2020 after an unrelated fall caused by mobility issues, plaintiff was finally issued a wheelchair.

82.    On June 18,  2020 plaintiff attended a medical callout where Dr. Young removed plaintiff's wheelchair and issued him a seated walker for his mobility issues. Plaintiff informed Dr. Young why the wheelchair was issued and that the seated walker would not substitute. Dr. Young would not be moved, removing plaintiff's ability to eat once again.

83.    On July 16,2020 plaintiff attended a medical call out with Dr. Young where he again informed Dr. Young that the walker does not allow plaintiff to eat and asked for the wheelchair. Dr. Young informed plaintiff the wheelchair would not provide him the support he needed, as he needed support higher up on his neck that the wheelchair would not provide.

84.    On July 18, 2020 plaintiff filed a medical kite to Dr. Young requesting his "meals HSR" be re-issued based on the information that a wheelchair would not provide him support high enough to allow him to eat in the dining hall.

**COMPLAINT FOR DAMAGES - 12**

85.    On July 20, 2020 plaintiff received a response to his July 18, 2020 medical kite from MA Harder informing him that he would not receive his "meals HSR."

86.    On July 23, 2020 plaintiff filed another medical kite requesting his "meals HSR" be reissued, this time requesting a response only from Dr. Young.

87.    On July 24, 2020 plaintiff received a response to his July 23, 2020 medical kite, again from in MA Harder, informing him that he would not be receiving his "meals HSR." This response from   MA Harder also included a negative behavior observation for requesting the accommodation of his "meals HSR" and a threat that if plaintiff requested this accommodation again he would be infracted.

88.    Starting on July 26, 2020 plaintiff filed multiple correspondence grievances inquiring about his Level 3 appeal that resulted in him being informed that his Level 3 grievance will not be processed.

89.    Throughout this time plaintiff's mother emailed DD Russell notifying him of the situation regarding plaintiff's "meals HSR" and not eating due to the denial of the "meals HSR."

90.    Plaintiff's mother also emailed multiple DOC staff members regarding the plaintiffs "meals HSR" issue. This included an email to HSM Kenneth Taylor on September 11, 2019 that went unanswered, as well as emails to DD Russell and CPA Flynn (formerly known as Lisa Oliver-Estes) on January 22, 2020. DD Russell responded to plaintiff's mother by informing her that GPM Fredrick and DD Fithian were notified of the situation and (Cc'ing) in CPA Flynn and title unknown DOC employee Chris R. Parker. CPA Flynn responded to plaintiff's mother by informing her that information is being gathered before CPA Flynn will get back to plaintiff's mother regarding the "meals HSR" issue and (Cc'ing) in title unknown DOC employee Charissa

1  M. Reno. Neither DD Russell nor CPA Flynn ever followed up or verified plaintiff's situation
2  was being handled properly.

3  **FIRST CAUSE OF ACTION**

4  **(42 U.S.C. § 1983 – Eighth Amendment – Against All Defendants Except Stafford**
5  **Creek Corrections Center, Washington State Department of Corrections and State of**
6  **Washington)**

7  91.   Plaintiff realleges and incorporates by reference herein paragraphs 1 through 90
8  with the same force and effect as if such paragraphs were separately realleged in this First Cause
9  of Action.

10  92.   The Eighth Amendment protects inmates against infliction of "cruel and unusual
11  punishment."

12  93.   Defendant FMD Herrington inflicted cruel and unusual punishment on plaintiff by
13  removing plaintiff's medically necessary "meals HSR" without examining plaintiff and without
14  medical reasoning.

15  94.   Defendant C/O1 John Doe inflicted cruel and unusual punishment on plaintiff by
16  denying plaintiff access to his medically necessary "meals HSR."

17  95.   Defendants FM1 Helberg in AC Clift inflicted cruel and unusual punishment on
18  plaintiff by taking plaintiff's valid medically necessary "meals HSR" without reason or authority
19  to do so.

20  96.   Defendant C/O2 John Doe inflicted cruel and unusual punishment on plaintiff by
21  refusing to assist plaintiff in accessing his valid medically necessary "meals HSR."

22  97.   Defendants C/O Montour and LT John Doe inflicted cruel and unusual
23  punishment on plaintiff by stopping plaintiff from using his valid medically necessary "meals

1  HSR." Additionally they inflicted cruel and unusual punishment on plaintiff by threatening

2  plaintiff with infraction if plaintiff used valid "meals HSR." They further inflicted cruel and

3  unusual punishment on plaintiff by having medical staff remove plaintiff's medically necessary

4  "meals HSR."

5  98.   Defendant Dr. Kenney inflicted cruel and unusual punishment on plaintiff by

6  removing plaintiff's medically necessary "meals HSR" five days after issuing it, after requests of

7  custody staff.

8  99.   Defendants GC Dahne and C/O3 John Doe inflicted cruel and unusual

9  punishment on plaintiff by not processing plaintiff's grievances, prolonging plaintiff's suffering.

10  100.   Defendants DOC Secretary Sinclair and Superintendent Haynes inflicted cruel

11  and unusual punishment on plaintiff by dismissing plaintiff's concerns and not preventing the

12  retaliatory treatment described in this complaint even though they were made aware of plaintiff's

13  concerns ahead of time.

14  101.   Defendants Dr. Young, PA-C light and ADA Compliance Manager Klemme

15  inflicted cruel and unusual punishment on plaintiff by denying plaintiff his medically necessary

16  "meals HSR." They further inflicted cruel and unusual punishment on plaintiff by not issuing

17  plaintiff any reasonable alternative to his medically necessary "meals HSR."

18  102.   Defendants MA Harder inflicted cruel and unusual punishment on plaintiff by

19  denying plaintiff to communicate with his provider. Further she inflicted cruel and unusual

20  punishment on plaintiff when she issued plaintiff a negative behavior observation for requesting

21  a medically necessary accommodation and threatening plaintiff with infraction if plaintiff made

22  the request again.

1       103.    Defendants ADA Coordinator Schreiber, CUS Jolly, Associate Superintendent

2 Van Ogle, CPM Bohan, and CPT Mainio inflicted cruel and unusual punishment on plaintiff by

3 disregarding and/or dismissing plaintiff's concerns in allowing the abusive treatment described

4 in this complaint to persist even though they were made aware of plaintiff's concerns.

5       104.    Under the Eighth Amendment, deliberate indifference to an inmates serious

6 medical needs constitutes cruel and unusual punishment.

7       105.    Defendants violated the Eighth Amendment by first removing plaintiff's

8 medically necessary "meals HSR," on multiple occasions, for non-medical reasons without

9 providing plaintiff with a reasonable alternative. Defendant's conduct was deliberately

10 indifferent to plaintiff's serious medical needs in repeated insistences that he needed the "meals

11 HSR" to access mainline meals.

12       106.    Once plaintiff notified medical and corrections staff of his medical need for the

13 "meals HSR," defendants further violated the Eighth Amendment's prohibition of cruel and

14 unusual punishment by failing to provide plaintiff with a reasonable alternative to access

15 mainline meals.

16       107.    Defendants also violated the Eighth Amendment by issuing plaintiff negative

17 behavior observations and threatening infractions for requesting the "meals HSR."

18       108.    Defendants further violated the Eighth Amendment by the delaying and not

19 processing plaintiff's grievances, prolonging his pain and suffering.

20       109.    Throughout their medical treatment of plaintiff, defendants failed to issue the

21 "meals HSR" or a reasonable alternative to access mainline meals, necessary to his health and

22 necessary to reduce his pain and suffering, inflicting on plaintiff additional physical pain and

23 mental anguish.

1   consumption. While plaintiff ultimately received a seated walker, this accommodation was for an

2   unrelated fall and does not provide the support necessary for plaintiff to eat mainline meals, the

3   significant delays and ongoing deliberate failures in his medical care, basic necessities, and

4   necessary accommodations continue to impact his prognosis for recovering his mobility and

5   living free from pain. The full extent of plaintiff's continuing harm will be proven at trial.

6        114.    Defendants subjected plaintiff to such constitutional deprivations by malice and

7   reckless and conscious disregard of his rights that an award of punitive damages is warranted.

8   The actions of the individual defendants, as described in this complaint, were deliberate,

9   intentional, and embarked on with knowledge of or in conscious disregard of the harm that

10  would be inflicted upon plaintiff. As a result of said intentional conduct, plaintiff is entitled to

11  punitive damages against the individual defendants in the amount to be proven at trial or the

12  maximum amount legally allowed sufficient to punish them and to deter others from like

13  conduct.

14                              **SECOND CAUSE OF ACTION**

15        **(42 U.S.C. § 1983 – First Amendment – Retaliation – Against FMD Herrington, Dr.**

16   **Kenney, FM1 Helberg, AC Clift, C/O   Montour, LT John Doe, Dr. Young, PA-C Light,**

17    **ADA Compliance Manager Klemme, ADA Coordinator Schrieber, GC Dahne, MA**

18   **Harder, HSM2 Taylor, HSM2 Parris, HSA Evans, Superintendent Haynes, C/O1 John**

19             **Doe, C/O2 John Doe, C/O3 John Doe, Female Medical Staff Jane Doe)**

20        115.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 114

21  with the same force and effect as if such paragraphs were separately realleged in this Second

22  Cause of Action.

116.     Plaintiff engaged in statutorily and constitutionally protected conduct by filing grievances, making internal complaints about his constitutional rights and notifying Washington State Department of Corrections Ombuds about defendants and other members of DOC staff.

117.     Defendant FMD Herrington retaliated against plaintiff by removing plaintiff's "meals HSR" and directing all other medical staff to not reissue the "meals HSR."

118.     Defendant Dr. Kenney retaliated against plaintiff by removing plaintiff's "meals HSR" at the request of custody staff for non-medical and non-penological reasons.

119.     Defendants FM1 Helberg and AC Clift retaliated against plaintiff by confiscating plaintiff's active, valid "meals HSR" without authority to do so and refusing to return it.

120.     Defendants C/O Montour and LT John Doe retaliated against plaintiff by not allowing plaintiff to use his active, valid "meals HSR" and threatening plaintiff with infraction if he did.

121.     Defendant MA Harder retaliated against plaintiff by issuing plaintiff a negative behavior log and threatening plaintiff with infraction if he requested his "meals HSR" accommodation.

122.     Defendant GC Dahne retaliated against plaintiff by not processing plaintiff's emergency and appeal grievances. Additionally he retaliated against plaintiff by deliberately and excessively delaying plaintiff's grievances.

123.     Defendant C/O3 John Doe retaliated against plaintiff by not processing plaintiff's emergency grievance.

124.     Defendant ADA Coordinator Schrieber retaliated against plaintiff by willfully ignoring plaintiff's need for accommodation to assist in plaintiff accessing mainline meals.

125.     Defendant Dr. Young retaliated against plaintiff by removing plaintiffs' wheelchair ASR and issuing plaintiff a seated walker because plaintiff complained and wrote grievances regarding being denied access to a wheelchair.

126.     Defendants PA-C Light and ADA Compliance Manager Klemme retaliated against plaintiff by not issuing plaintiff a wheelchair after issuing plaintiff a wheelchair ASR.

127.     Defendants HSM2 Taylor, HSM2 Parris, HSA Evans, GC Dahne, and Superintendent Haynes retaliated against plaintiff by issuing findings of no wrong doing by medical staff and denying plaintiff his "meals HSR" on his grievances.

128.     As a direct and proximate result of defendants actions against plaintiff as alleged above, plaintiff has suffered physical injury, increased physical pain, mental anguish, anxiety, and emotional distress in an amount according to proof at trial or the maximum amount legally allowed.

**THIRD CAUSE OF ACTION**

**(42 U.S.C. § 12131 ("ADA") and Rehabilitation Act of 1973 – Disability Discrimination and Failure to Accommodate – Against Stafford Creek Corrections Center, Washington State Department of Corrections, and State of Washington)**

129.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 128 with the same force and effect as if such paragraphs were separately realleged in this Third Cause of Action.

130.     Title II of the Americans with Disabilities Act ("ADA") provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12131.

1      131.   DOC has received federal monies to reasonably accommodate persons with

2  disabilities in their facilities, program activities, and services, and to reasonably modify such

3  facilities, services, and programs to accomplish this purpose.

4      132.   SCCC is a public entity within the meaning of Title II of the ADA in that they

5  provide programs, services, and/or activities to the general public. Combined, Title II and

6  Section 504 of the ADA prohibit discrimination against persons with conditions that meet the

7  definition of "disability" laid out in that legislation.

8      133.   At all times relevant hereto, plaintiff was qualified individual within the meaning

9  of Title II of the ADA and met the essential eligibility requirements for the receipt of the

10  services, programs, or activities of DOC as well as the prohibitions against discrimination.

11  Specifically, plaintiff is legally blind, has a severe neck injury that has caused him to wear a neck

12  brace for well over three years resulting in him needing back support to consume any and all

13  meals and resulting in him needing a wheelchair, pain down his spine causing decreased

14  mobility, be that "substantially limit one or more major life activities," including but not limited

15  to "walking, standing, and working." 42 U.S.C. § 12102.

16      134.   SCCC was deliberately indifferent in failing to provide plaintiff with reasonable

17  accommodation and other services related to his disabilities causing the plaintiff to suffer

18  needlessly. The DOC denied him the rights and benefits accorded to other inmates solely by

19  reason of his disabilities in violation of the ADA and Rehabilitation Act.

20      135.   Plaintiff's medical condition was exacerbated when treatment for his condition

21  was denied and no legitimate treatment plan was put in place.

22      136.   Plaintiff made defendants aware of his need for reasonable accommodation by

23  repeatedly communicating to defendants regarding his medical conditions.

137. Plaintiff was denied proper medical care, which both constitutes discrimination in that other inmates without his condition were given proper medical care, and as a result of the untimely treatment below medically acceptable standards plaintiff receives he is unable to participate in other DOC programs and denied freedoms granted to other inmates.

138. DOC's failure to enforce appropriate policies and procedures to ensure the provision of necessary accommodations, modifications, and/or services to plaintiff as an inmate with a disability caused plaintiff to experience physical, emotional, and mental injury to an extent to be proven at trial.

## FOURTH CAUSE OF ACTION

### (General Negligence – Against all Defendants)

139. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 138 with the same force and effect as if such paragraphs were separately realleged in this Fourth Cause of Action.

140. Because plaintiff is an inmate within the Washington State Department of Corrections housed at Stafford Creek Corrections Center, DOC has full control over all aspects of his life including his movements, access to food and meals, access to medical providers, access to medical accommodations (such as "meals HSR") and access to medical equipment (such as wheelchair) that may mitigate his pain and reduce his suffering.

141. Defendants had a duty to ensure that plaintiff received the medical treatment his neck injury warranted. Defendants breached that duty by removing his "meals HSR" on multiple occasions and failing to timely issued him a wheelchair. Overall, defendants breached their duty to plaintiff through failing to follow through with the treatment plan and deliberately ignoring his multiple requests for assistance due to the pain he was experiencing.

1    142.    As a direct and proximate result of defendants' negligence, plaintiff has suffered

2    physical injury and avoidable physical pain, as well as mental anguish, anxiety, and emotional

3    distress in an amount according to proof at trial or the maximum amount legally allowed.

4                              **FIFTH CAUSE OF ACTION**

5          **(Negligent infliction of Physical Injury and Emotional Distress – Against all**

6                                      **Defendants)**

7    143.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 142

8    with the same force and effect as if such paragraphs were separately realleged in this Fifth Cause

9    of Action.

10   144.    Defendants had direct knowledge of plaintiff's pain and inability to eat without

11   back support and negligently prolonged and inflicted additional physical pain and emotional

12   distress by removing plaintiff's "meals HSR" and refusing to issue plaintiff a wheelchair to assist

13   with plaintiff accessing mainline meals.

14   145.    Defendants likewise had direct knowledge of plaintiff's pain and physical

15   condition and negligently prolonged and worsened his pain by refusing to appropriately evaluate

16   his physical condition, denying plaintiff treatment necessary to alleviate his suffering.

17   146.    Defendants additionally had direct knowledge of plaintiff's pain and physical

18   condition and negligently worsened his pain by refusing to provide appropriate pain management

19   and assistance ("meals HSR" and wheelchair).

20   147.    As a direct and proximate result of defendants' negligent actions against plaintiff

21   as alleged above, plaintiff has suffered weight loss, worsened pain, loss of mobility, muscular

22   atrophy and other physical damages yet to be determined; as well as anxiety, emotional distress,

1   and ongoing fear for his life. The full extent of plaintiff's physical and mental damages due to

2   defendants' neglect will be shown at time of trial.

3                                  **SIXTH CAUSE OF ACTION**

4           **(Failure to Supervise – Against FMD Herrington, ADA Coordinator Schreiber,**

5   **ADA Compliance Manager Klemme, ACM'O John Doe, CMO John Doe, FM1 Helberg,**

6   **GPM Frederick, GPA Flynn, DD Russell, DD Fithian, LT John Doe, CPM Bohan, CPT**

7   **Mainio, Associate Superintendent Van Olge, Superintendent Haynes, DOC Secretary**

8   **Sinclair, Stafford Creek Corrections Center, Washington State Department of Corrections**

9                                  **and the State of Washington)**

10          148.    Plaintiff realleges and incorporates by reference herein paragraphs 1 through 147

11  with the same force and effect as if such paragraphs were separately realleged in this Sixth Cause

12  of Action.

13          149.    As Facility Medical Director, defendant Herrington is responsible for supervising

14  the care his doctors, physician's assistants, nurses, and all other SCCC medical staff provided to

15  SCCC inmates, including plaintiff.

16          150.    ~~[struck through text]~~

17  ~~[struck through text]~~

18  ~~[struck through text]~~

19          151.    As ADA Coordinator, defendant Schreiber is responsible for supervising the

20  treatment and accommodation of all SCCC inmates, including plaintiff.

21          152.    As ADA Program Compliance Manager, defendant Klemme is responsible for

22  supervising the treatment and accommodation of all DOC ADA inmates, including plaintiff.

1    153.   Through their failure to intervene in and correct the retaliatory treatment toward

2    plaintiff with regard to not issuing a wheelchair when there is an active ASR for a wheelchair,

3    defendants Klemme, Schreiber, and ^ Herrington failed to adequately supervise their staff.

4    154.   As Assistant Chief Medical Officer ("ACMO") of DOC, defendant John Jane Doe is

5    responsible for supervising the actions and care of his doctors, physicians assistants, nurses, and

6    all other doc medical personnel provide to doc inmates and ensure that all inmates are receiving

7    proper and necessary treatment, including plaintiff.

8    155.   As Chief Medical Officer ("CMO") of DOC, defendant John Jane Doe is responsible

9    for supervising the actions and care of his AMCO, doctors, physicians assistants, nurses, and all

10   other doc medical personnel provide to doc inmates and ensure that all inmates are receiving

11   proper and necessary treatment, including plaintiff.

12   156.   Through their failure to intervene in and correct the retaliatory treatment towards

13   plaintiff with regard to removing HSR's, not issuing HSR's, not issuing wheelchair while there is

14   an active ASR, and not ensuring plaintiff is receiving adequate nourishment, defendants ACMO

15   John Doe and CMO John Doe failed to adequately supervise their staff.

16   157.   As Food Manager 1, defendant Helberg is responsible for supervising all SCCC

17   kitchen staff, their interactions with inmates, and the food they provide to inmates.

18   158.   Through her failure to intervene in and correct the retaliatory treatment toward

19   plaintiff with regard to confiscating plaintiff's "meal HSR" and feeding plaintiff, defendant

20   Helberg failed to adequately supervise her staff.

21   159.   As Grievance Program Manager and Correctional Program Administrator,

22   respectively, defendants Fredrick and Flynn is responsible for supervising the operation of the

23   grievance program and the processing of grievances, including plaintiff's grievances.

160.     Through their failure to intervene in and correct the retaliatory treatment toward plaintiff with regard to processing grievances and issuing unauthorized responses, defendants Fredrick and Flynn failed to adequately supervise their staff.

161.     As Superintendent of SCCC, defendant Haynes is responsible for supervising SCCC, its operation, its employees and the welfare of the inmates housed at SCCC, including plaintiff.

162.     As Deputy Directors, defendants Fithian and Russell is responsible for supervising and overseeing DOC facilities, employees, medical, programs and inmates, including plaintiff.

163.     As DOC Secretary, defendant Sinclair is responsible for supervising all of DOC, its operations, its employees and the welfare of all inmates housed by DOC in all of its facilities, including plaintiff.

164.     Through their failure to intervene in and correct the retaliatory treatment toward plaintiff with regard to not issuing a wheelchair, not allowing inmate assistance, encouraging harm, infracting for medical issues, processing of grievances and issuing unauthorized grievance responses, defendants Haynes, Fithian, Russell, and Sinclair failed to adequately supervise their staff.

165.     As Lieutenant, defendant John Doe is responsible for supervising the actions of all C/O's and how they interact with and treat inmates including plaintiff.

166.     Through his failure to intervene in and correct the retaliatory treatment towards plaintiff with regard to not honoring or allowing the exercise of active, valid "meals HSR," defendant John Doe failed to adequately supervise his staff.

167.   As Custody Program Manager, defendant Bohan is responsible for supervising the actions of all C/O's, CUS', LT's, and Grievance Coordinators and how they interact with and treat inmates, including plaintiff.

168.   As Captain, defendant Mainio his responsible for supervising the actions of all C/O's, CUS', LT's, and CPM's and how they interact with and treat inmates, including plaintiff.

169.   As Associate Superintendent, defendant Van Ogle is responsible for supervising the actions of all C/O's, CUS', LT's, Grievance Coordinators, CPM's, and the CPT and how they interact with and treat inmates, including plaintiff.

170.   Through their failure to intervene in and correct the retaliatory treatment toward plaintiff with regard to chilling grievances and allowing the exercise of an active, valid "meals HSR," defendants Bohan, Mainio, and Van Ogle failed to adequately supervise their staff.

171.   As the institution responsible for hiring, supervising, and evaluating all individual defendants, defendant Washington State Department of Corrections failed to appropriately supervise its employees through their failure to develop a system within their medical department that tracks necessary medical equipment referrals and issuances.

172.   Defendant Washington State Department of Corrections failed to verify that the medical staff they hired were acting appropriately within their area of scope while performing their job duties with the Department.

173.   The general treatment of plaintiff, as described in this complaint fell well below the ADA and medically accepted standards of care. By their failure to ensure their subordinates adherence to ADA and medically accepted standards of care, defendants jointly and severally caused plaintiff bodily injury, pain and suffering, and mental and emotional distress. They caused his existing conditions to worsen and dramatically alter the prognosis of his health

1   conditions. Accordingly, plaintiff is entitled to damages in an amount to be proven at trial or the

2   maximum amount legally allowed.

3   **SEVENTH CAUSE OF ACTION**

4   **(Respondeat Superior – Against the State of Washington)**

5       174.   Plaintiff realleges and incorporates by reference herein paragraphs 1 through 130

6   with the same force and effect as if such paragraphs were separately realleged in this Seventh

7   Cause of Action.

8       175.   In doing the things alleged herein, defendant employees were acting within the

9   course and scope of their employment with the State of Washington. The State of Washington is

10  therefore liable for the conduct of defend employees.

11      176.   Plaintiff is thus entitled to compensatory damages from defendant State of

12  Washington in an amount according to proof at trial or the maximum amount legally allowed.

13  **PRAYER**

14  WHEREFORE, plaintiff prays for the following relief against defendants:

15      A.   For general and special compensatory damages for plaintiff and against

16  defendants in the amount of $100,000,000.00 or the maximum amount allowable by law

17  according to proof at trial;

18      B.   For punitive damages against each individual defendant;

19      C.   For a jury trial on all issues triable by jury;

20      D.   For reasonable attorney fees according to law of statute;

21      E.   For cost of suit incurred herein; and

22      F.   For such other and further relief as the Court may deem just.

Plaintiff requests the right to amend this complaint at a later date upon discovery of new information.

DATED this 26 day of January, 2022

Daryl Rogers
DOC # 412163
Stafford Creek Corrections Center
191 Constantine Way
Aberdeen, WA 98520

Wendell M Armstead
(Researched and Prepared By)