UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARYL ROGERS,<br><br>                Plaintiff,<br>    v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,<br><br>                Defendants. | Case No. 3:21-cv-05011-BJR-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 15, 2024 |

This matter is before the Court on Defendant Danee Young's filing of a motion for summary judgment. Dkt. 77. Plaintiff filed a response. Dkt. 121. Plaintiff has brought suit under 42 U.S.C. § 1983 against Dr. Young for allegedly violating his Eighth and First Amendment rights. He further alleges that Dr. Young acted negligently in violation of Washington State law. Dkt. 21. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court GRANT Defendant's motion and dismiss Plaintiff's claims against Dr. Young with prejudice.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff is currently an inmate at Monroe Correctional Complex-Twins River. Dkt. 103. During the time period when Plaintiff was a patient of Dr. Young, he was housed at Stafford Creek Corrections Center. Dkt. 21 at ¶51.

REPORT AND RECOMMENDATION - 1

Plaintiff alleges that prior to his criminal conviction, he sustained a serious neck injury in a motor vehicle accident that resulted in a significant left-sided neck muscle contracture and secondary atrophy. *See id.* at ¶48; *see also* Dkt. 78 (Declaration of Dr. Danee Young) at ¶6. While housed at Coyote Ridge, Plaintiff states he was issued a Health Status Report ("HSR") that allowed him to eat his meals in his cell, but once he was transferred to Stafford Creek Corrections Center in July 2019, the HSR was rescinded. *See* Dkt. 21 at ¶¶49, 51. After filing grievances on the matter, Plaintiff was issued a wheelchair for meals instead. *Id.* at ¶49. Plaintiff contends it took several months for him to get the wheelchair and was only issued one after a separate incident when he was injured after a fall on June 17, 2020. *Id.* at ¶¶80-81; *see also* Dkt. 78 at ¶6.

On June 18, 2020, Dr. Young, a medical doctor at Stafford Creek at the time, saw Plaintiff for the first time in relation to his ground level fall the day before. Dkt. 78 at ¶6. Dr. Young states that Plaintiff informed her that he was using a wheelchair to ambulate for all activities but had been advised that it was not authorized for constant use. *Id.* Dr. Young further states that Plaintiff admitted he did not require the wheelchair for ambulation; rather, he needed it for back support at meals. *Id.* Dr. Young advised Plaintiff of the risks of atrophy/disuse associated with continuous use of a wheelchair. *Id.* After examining Plaintiff, Dr. Young diagnosed him with (1) cervical muscle contracture and secondary disuse atrophy and (2) right shoulder bruising and pain post fall. *Id.* She prescribed him with a trial of non-steroidal anti-inflammatories, neck exercises and a four-wheeled walker only. *Id.*

On July 16, 2020, Dr. Young had another appointment with Plaintiff. *Id.* at ¶7. At this point, Plaintiff was attending physical therapy and saw a different doctor to evaluate

REPORT AND RECOMMENDATION - 2

whether he needed surgery for his neck. *Id.* It was determined that Plaintiff did not need surgical intervention. *Id.* Dr. Young states that during this visit, Plaintiff reported that the walker was helping with his mobility and he had improved neck flexion. *Id.* Plaintiff nonetheless requested a wheelchair again. *Id.* Dr. Young denied Plaintiff's request on the grounds that the walker provided the same amount of support for his neck, there had been improvement in flexion, and with the wheelchair, there was a high risk for disuse atrophy. *Id.* This was Dr. Young's last appointment and interaction with Plaintiff. *Id.* at ¶8.

Plaintiff alleges that after his last appointment with Dr. Young, he filed a medical kite directed to Dr. Young requesting that she reissue his meals HSR. Dkt. 21 at ¶81. Dr. Young did not respond to this kite – MA Harder responded to Plaintiff's kite instead. *See id.* at ¶85. Plaintiff further states that starting on July 26, 2020, Plaintiff submitted several grievances relating to his request for a wheelchair. *Id.* Dr. Young states that she was not aware of Plaintiff's grievances or kites relating to a meals HSR or his request for a wheelchair. She was not asked to comment on his grievances and had no role in reviewing or evaluating them. Dkt. 78 at ¶9.

Plaintiff contends that Dr. Young inflicted cruel and unusual punishment on Plaintiff when she denied him his meals HSR and by not issuing him a reasonable alternative to the meals HSR. He further contends that Dr. Young retaliated against him in violation of his First Amendment rights by removing his wheelchair ASR and issuing him a seated walker "because plaintiff complained and wrote grievances" about being denied a wheelchair. Dkt. 21.

REPORT AND RECOMMENDATION - 3

# DISCUSSION

## A. Summary Judgment Standard

Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.,* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

REPORT AND RECOMMENDATION - 4

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon,* 698 F.3d 715, 728-29 (9th Cir. 2012).

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

B.  Plaintiff's Eighth Amendment Claim

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Under the Eighth Amendment, prison officials are required to provide prisoners with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy,* 801 F.2d 1080, 1107 (9th Cir. 1986).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth

Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [ (2) ] the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the prison officials responded to the need with deliberate indifference. *See Farmer*, 511 U.S. at 834. Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

It is well established that a mere difference of opinion concerning proper medical care is not sufficient to establish deliberate indifference. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989). In order to prevail on an Eighth Amendment claim which involves choices between alternative courses of treatment, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances ... and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). A difference of opinion between a prisoner-patient and prison medical authorities concerning proper treatment likewise does not give rise to a claim under § 1983. *Franklin v. Oregon,* 662 F.2d 1337, 1344 (9th Cir.1981).

Here, Plaintiff asserts that Dr. Young demonstrated deliberate indifference to his serious medical needs by removing his previously-assigned wheelchair and giving him a walker instead. The record, however, is devoid of any evidence that Dr. Young was deliberately indifferent to Plaintiff's medical needs after his fall. To the contrary, the record demonstrates that Plaintiff was provided medication for his pain and was evaluated twice by Dr. Young. It was during those evaluations that Dr. Young determined, in her professional opinion, that Plaintiff was not medically required to use a wheelchair, the walker would provide Plaintiff with sufficient neck support, and continuous use of the wheelchair would increase Plaintiff's risk for disuse atrophy. Plaintiff's assertion that it was necessary for him to have a wheelchair, without more, is not sufficient to state a claim for relief under the Eighth Amendment. Thus, Defendant's motion for summary judgment on Plaintiff's Eighth Amendment claim should be GRANTED.

C. Plaintiff's First Amendment Claim

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. *Id.* First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

Second, the plaintiff must claim the defendant took adverse action against the plaintiff. *Id.* at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *See Pratt*, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

Fourth, the plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

It is undisputed Plaintiff filed a health services kite on June 19, 2020, and directed it to Dr. Young. Dkt. 121 at 52. She replied that she would evaluate Plaintiff during their scheduled appointment. *Id.* It is also undisputed that Plaintiff filed several grievances relating to his request for a wheelchair. Dkt. 121 at 67-79. Plaintiff has also submitted evidence that "MA Harder[1]" received a kite from Plaintiff on July 23, 2020, regarding his request for an HSR to eat his mainline meals in his cell. *See id.* at 56. As a result, a "negative" Offender Behavior Observation sheet was submitted in which MA Harder stated that Plaintiff had already been instructed multiple times that Dr. Young was not going to provide him with this HSR and he should stop filing the same kites. *Id.* at 56.

Plaintiff alleges that Dr. Young retaliated against him by removing the wheelchair previously assigned to him – and instead issuing him a seated walker "because plaintiff complained and wrote grievances" about being denied a wheelchair. Plaintiff has not submitted any evidence, however, to show that Dr. Young took an adverse action, i.e., removing his wheelchair, *as a result of* Plaintiff filing grievances and kites.

Dr. Young states that she had no knowledge that Plaintiff filed any grievances – she was not involved with the process of reviewing or responding to Plaintiff's grievances. Plaintiff has not shown that Dr. Young was, in any way, involved with the review of his grievances. Further, even if the Offender Behavior Observation was considered an adverse action, it was *not* issued by Dr. Young, as admitted by Plaintiff.

---

[1] The Viewer Offender Behavior Observation document submitted by Plaintiff in response to Defendant's summary judgment motion does not explicitly list "MA Harder" as the author of the document.

REPORT AND RECOMMENDATION - 9

1  Therefore, Defendant's motion for summary judgment on Plaintiff's First
2  Amendment claim should be GRANTED.

3  D.  Plaintiff's State Tort Claims

4  Plaintiff finally asserts that Dr. Young acted negligently when providing Plaintiff
5  with medical care, and as a result of this negligence, Plaintiff suffered from emotional
6  distress.

7  i.  Medical Negligence

8  This Court has supplemental subject-matter jurisdiction over Plaintiff's state-law
9  medical negligence claim because it is part of the "same case or controversy" as
10 Plaintiff's federal section 1983 claims. See 28 U.S.C. § 1367(a). However, "in the usual
11 case in which all federal-law claims are eliminated before trial, the balance of factors to
12 be considered ... will point toward declining to exercise jurisdiction over the remaining
13 state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988); *see*
14 28 U.S.C. § 1367(c). As discussed above, the Court should dismiss Plaintiff's claim of
15 deliberate indifference under the Eighth Amendment. Accordingly, the Court should
16 decline to exercise jurisdiction over the related state-law claims.

17 If the Court reaches the merits of Plaintiff's medical-negligence claim, it should
18 nonetheless grant Defendant's motion for summary judgment. A claim
19 of medical negligence under Washington law requires the plaintiff to prove two
20 elements: 1) defendant "failed to exercise that degree of care, skill, and learning
21 expected of a reasonably prudent health care provider" in defendant's position, and 2)
22 that failure proximately caused plaintiff's injury. RCW § 7.70.040; *Keck v. Collins*, 184
23 Wn.2d 358, 371, 357 P.3d 1080 (2015). "[T]o defeat summary judgment in almost

24

25

all medical negligence cases, the plaintiffs must produce competent medical expert testimony establishing that the injury was proximately caused by a failure to comply with the applicable standard of care." *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). An expert must testify about "what a reasonable doctor would or would not have done, that the [d]octor[ ] failed to act in that manner, and that this failure caused her injuries." *Keck*, 184 Wn.2d at 371, 357 P.3d 1080. Nonetheless, expert testimony is not necessary if the medical facts are observable to the lay person. *Bauer v. White*, 95 Wn. App. 663, 667, 976 P.2d 664 (1999).

Plaintiff does not contend that this is a rare case in which expert testimony is unnecessary to establish the standard of care because the medical facts are observable to the lay person. *See Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993). Plaintiff has not provided competent medical evidence sufficient to support a claim for medical negligence. Accordingly, the Court should GRANT Dr. Young's motion for summary judgment as to Plaintiff's medical negligence claim.

    ii.    Negligent Infliction of Emotional Distress

Where an injury is alleged to have occurred as a result of health care, any action for damages for that injury is governed exclusively by the remedies contained in RCW 7.70 et seq. *See, e.g., Berger v. Sonneland*, 144 Wn.2d 91, 109, 26 P.3d 257 (2001). Plaintiff's claims against Dr. Young "arises out of healthcare" as contemplated by RCW 7.70.010 and is, therefore, limited by the application of that statute. Therefore, because Plaintiff's claim is controlled by statute, Plaintiff's negligent infliction of emotion distress claim is not viable against Dr. Young and must be dismissed. Defendant's motion for summary judgment on this claim should be GRANTED.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court Dr. Young's motion for summary judgment and dismiss Plaintiff's claims against Dr. Young with prejudice. A proposed order is attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on March 15, 2024 as noted in the caption.".

Dated this 29th day of February, 2024.

*[signature: Theresa L. Fricke]*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12