1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5
6

DARYL ROGERS,

7

Plaintiff,

8

v.

9

WASHINGTON DEPARTMENT OF
CORRECTIONS, et al.,

10

Defendants.

Case No. 3:21-cv-05011-BJR-TLF

REPORT AND
RECOMMENDATION

NOTED FOR MAY 17, 2024

11
12

This matter comes before the Court on Defendants State of Washington,

13

Washington State Department of Corrections ("DOC"), Stafford Creek Corrections

14

Center ("SCCC"), Herrington, Harder, Dr. Kenney, Clift, Helberg, Montour, Jolly, Bohan,

Haynes, Cardwell, Schreiber, Dhane, K. Taylor, T. Taylor, Frederick, Parris, Evans, Von

15

Ogle, Mainio, Burkett, Sinclair, Light, Klemme, Russel, Fithian, Parker, and Reno's

16

(collectively, the "State Defendants") motion for summary judgment. Dkt. 80. The Court

17

accepted Plaintiff's response brief attached to his motion for extension of time on

18

December 18, 2023. Dkt. 121, 125. Plaintiff has brought under 42 U.S.C. § 1983 against

19

the State Defendants for allegedly depriving him of meals because he was not permitted

20

to bring his meals back to his cell from the dining hall. Dkt. 21.

21

This matter has been referred to the undersigned Magistrate Judge. Mathews,

22

Sec'y of H.E.W. v. Weber, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule

23

MJR 4(a). For the reasons set forth below, the undersigned recommends the Court

24
25

GRANT the State Defendants' motion and dismiss Plaintiff's claims against the

Defendants with prejudice.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff is currently an inmate at Monroe Correctional Complex-Twins River. Dkt.

103. During the time of the incidents raised by Plaintiff in his complaint, he was housed

at Stafford Creek Corrections Center ("SCCC"). Dkt. 21 (Amended Complaint).

In August 2018, before going into DOC's custody, Plaintiff was in a car accident

during which he sustained an injury to his neck. He was provided a neck brace in the

Emergency Room, which he was able to keep upon entering into DOC's custody. Due

to the pain and discomfort he felt to his neck, Plaintiff requested and was subsequently

issued a Health Status Report ("HSR") by a provider, non-defendant Shane Ririe, in

Coyote Ridge Correction Center allowing him to eat his meals in his cell. Dkt. 88 at

Exhibit A.

Mr. Ririe states that his general practice, as a PA-C, was to issue temporary

short term HSR's "to collect more information about the success of particular

accommodations prior to requesting longer term HSR's" from the DOC Chief Medical

Officer or the Facility Medical Director. Dkt. 88 (Declaration of Shane Ririe) at ¶6. Mr.

Ririe did not make a long-term HSR request for Plaintiff and never determined that the

HSR for consumption of meals in his cell was medically necessary. *Id.*

Mr. Ririe initially issued an HSR providing for him to eat meals in his cell for one

month; Mr. Ririe states that during this month, his plan was to consult with specialists to

identify Plaintiff's issues and how to best solve them. *Id.* at ¶9; Exhibit C. After the first

HSR expired, Plaintiff requested that it be reissued. *Id.* at ¶12. Mr. Ririe granted

Plaintiff's request because he was still consulting with specialists. *Id.* at ¶13. Before Mr. Ririe was able to reevaluate Plaintiff again, Plaintiff was transferred to SCCC and no longer in Mr. Ririe's case. *Id.* at ¶16.

In July 2019, Plaintiff was transferred to SCCC. Ryan Herrington, the Medical Director of SCCC from July 2017 to August 2021, reviewed Plaintiff's previously-issued HSR at Coyote Ridge Corrections Center and determined that it was not medically necessary for Plaintiff to eat his meals in his cell. *See* Dkt. 83 (Declaration of Ryan Herrington) at ¶10. Based on Dr. Herrington's experience, he was not aware of any medical basis that would require an individual to consume his or her meals in their cell, other than for infectious disease control. *Id.* at ¶9. Dr. Herrington, via a medical kite to Plaintiff, offered to write him an HSR for extended time to eat in the dining hall as an alternative solution for Plaintiff. *Id.* at ¶10.

On September 12, 2019, Dr. Kenney, who was not aware that Dr. Herrington had revoked Plaintiff's HSR in July 2019 after Plaintiff was transferred to SCCC, issued Plaintiff the HSR allowing Plaintiff to consume meals in his cell. *See* Dkt. 86 (Declaration of John Kenney) at ¶10. Dr. Kenney states that it is his general practice to reissue any active HSR's for the first three months after an inmate is transferred, so that "any existing accommodations would remain until the inmate could be medically evaluated at SCCC." *Id.* at ¶7. Dr. Kenney states that on September 12, 2019, he neither examined Plaintiff nor made an independent medical determination concerning

the necessity of the HSR[1]. *Id.* at ¶9. Plaintiff alleges that Dr. Kenney did find his "meal HSR medically necessary." Dkt. 21 at ¶55.

On September 14, 2019, while in the main dining hall, Plaintiff alleges Defendant Clift "seized" Plaintiff's HSR. *See* Dkt. 121, at Attachment I, p. 24. Defendant Clift allegedly informed Plaintiff that she was authorized to seize it at Defendant Helberg's direction. *Id.* Plaintiff acknowledged that he did not see Defendant Helberg actually request or take possession of the HSR. *See* Dkt. 81 (Declaration of William Schwarz) at Exhibit A (Deposition of Daryl Rogers), 102:25-103:7. Later the same day, Plaintiff went back to the dinner mainline with the second copy of his HSR and was allegedly stopped on his way out of the dining hall by Defendant Montour. *See* Dkt. 121, at Attachment I, p. 25. Defendant Montour and "LT John Doe" instructed Plaintiff not to use his HSR until Dr. Kenney returned from the weekend. *Id.*

After Dr. Kenney issued the HSR, he states that he learned that custody officials expressed concerns about the HSR. Dkt. 86 at ¶11. Dr. Kenney, thereafter, met with Plaintiff to discuss these concerns; Plaintiff allegedly informed Dr. Kenney that he could eat in the "chow hall." *Id.* at ¶¶11-12. Dr. Kenney then terminated the HSR allowing Plaintiff to bring his meals back to his cell. *Id.* Plaintiff disputes informing Dr. Kenney that he was able to eat in the dining hall. *See* Dkt. 121, at Attachment I, p. 25.

Plaintiff sent multiple Kiosk messages to Haynes, Van Ogle, Schreiber, and Jolly to that his HSR had been wrongfully confiscated. *Id*. On September 17, 2019, Plaintiff received an OMNI Kiosk Message from Defendant M. Cardwell on behalf of Defendant

---

[1] Plaintiff states that he had a "medical appointment" with Dr. Kenney on September 12, 2023. *See* Dkt. 121 (Plaintiff's Response to Defendants' Summary Judgment Brief) at Attachment I, p. 24. The Court assumes this was a scrivener's error and Plaintiff meant to state that the appointment was in 2019. Plaintiff further alleges that Dr. Kenney looked at his medical file and "noted" his neck injury. *Id.*

Superintendent Haynes accusing Plaintiff of forging the HSR. *Id.* The message informed

Plaintiff that his HSR was confiscated because Food Services "does not honor

photocopy" HSRs. Rather, Defendant Cardwell informed Plaintiff that Food Services

requires "OMNI as offenders have made their own HSRs in the past." *Id.* at p. 107.

Plaintiff filed an emergency grievance on September 25, 2019, requesting that

his HSR be reissued. *Id.* at 107. Plaintiff was interviewed, and it was determined that

eating meals in his cell was not medically necessary. He was informed by Defendant

Dahne to correspond with medical regarding his needs and to work with ADA if he

believed this accommodation was necessary as a result of a disability. *Id.* at 70. Plaintiff

attempted to appeal his grievance to Level III; his appeal was not accepted for failure to

appeal to Level II, first. *Id.* at 71. The grievance staff requested additional time to

respond to Plaintiff's grievance. Plaintiff, in turn, wrote to Defendant Fredrick, Grievance

Program Manager, complaining about this extension. *Id.* at 26.

On April 1, 2020, Plaintiff received a response to his grievance appeal from non-

defendant Shane Evans – Plaintiff was informed that he did not provide additional

supporting documents in his appeal, and further, Plaintiff declined to accept a HSR for

extended time to eat. *Id.* at 76. Plaintiff then appealed his grievance to Level III. The

Grievance Office requested a rewrite on April 14, 2020, but the Grievance Office did not

receive the rewrite from Plaintiff. *Id.* at 77.

Plaintiff was seen by Defendant Scott Light on May 14, 2020. Dkt. 87

(Declaration of Scott Light) at ¶5, Exhibit 1 (sealed). Defendant Light recommended that

some sort of back support, as opposed to mobility assistance, be provided for Plaintiff

during meals so that he could eat with the general prison population. *Id.* at ¶8.

Defendant Light deferred to DOC's ADA unit to determine the specific measures that could be made available for Plaintiff. Defendant Light expressed concern that continued reliance on a passive mobility aid, such as a wheelchair, would result in reliance by Plaintiff and cause further disability. *Id.* at ¶9. The neck collar exacerbated the weakness in Plaintiff's neck according to Defendant Light. *Id.*

Further, on June 17, 2020, and January 10, 2023, Defendant Light saw videos of Plaintiff speaking on the phone for 20 minutes without back support, and ambulating normally while speaking with other inmates for over 20 minutes. *Id.* at ¶¶14, 18.

Plaintiff claims on June 16, 2020, he asked Defendant Jolly to get him a wheelchair from medical; Defendant Jolly allegedly refused and threatened him with an infraction. *See* Dkt. 121, at Attachment I, p. 27. Plaintiff states that he was only given a wheelchair on June 17, 2020, after he fell. *See id.*

Dr. Young[2] allegedly removed Plaintiff's wheelchair on June 18, 2020, and instead issued Plaintiff a walker to sit on. *Id.* After sending a medical kite to Dr. Young informing him that the seated walker was not providing Plaintiff the support he needed, Plaintiff claims Defendant Harder issued a "negative behavior observation entry" and threatened him with an infraction. *Id.* The observation entry, dated July 24, 2020, states that Plaintiff had sent multiple kites already requesting an HSR to eat his meals in his cell and Plaintiff had been told many times that Dr. Young will not issue the HSR. Plaintiff was warned to no longer send kites requesting the same thing; because Plaintiff

---

[2] Plaintiff named Dr. Young as a defendant. Dr. Young moved for summary judgment, separately; the undersigned's Report and Recommendation is pending before the Court.

did not follow this directive, a negative behavior log was entered. It is unclear who

authored the observation log as there is no name on it. *Id.* at 56.

Plaintiff claims during this time, he was eating a single top ramen some days and

not eating at all other days. *Id.* at 25. He states that while he typically weighed around

150 pounds, he was "visibly losing significant weight, had severe hunger pains, began

to get headaches from not eating, started to have uncontrollable muscle spasms and

stiffness," and had a "general feeling of weakness due to not eating." *Id.* Plaintiff

estimates he lost more than 20 pounds by April 2020. *Id.*

Defendant Light's Primary Encounter Report states that Plaintiff weighed 138

pounds in September 2019 and weighed 138 pounds on May 14, 2020. Dkt. 92 (Sealed

Exhibits to Light Declaration) at Exhibit 1. While Defendant Light notes that Plaintiff

claims he was skipping a lot of meals, Plaintiff was still eating more -- the "boats that

can be eaten in the cell have become ubiquitous during the pandemic." *Id.*

DISCUSSION

A.  Standards

    1.  <u>Summary Judgment Standard</u>

Summary judgment is supported "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Federal

Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to

demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is

presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon*, 698 F.3d 715, 728-29 (9th Cir. 2012).

2. <u>42 U.S.C. 1983</u>

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Government officials are entitled to qualified immunity in suits against them for an alleged violation of a constitutional right unless a plaintiff makes a two-part showing. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The plaintiff must show that officials violated a constitutional right *and* that this right was "clearly established." *Id*. A court may consider the two prongs in whatever order it chooses. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether the defendant's conduct violated a constitutional right and (2) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

As discussed below, viewed in light most favorable to the Plaintiff, the facts do not show that the Defendants' acts violated Plaintiff's Constitutional rights. Accordingly, the Defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

B. Plaintiff's Constitutional Claims against the State of Washington, Department of Corrections, SCCC, and Individual Defendants in their Official Capacities

Plaintiff names the State of Washington, Department of Corrections, and SCCC defendants in this case. He further brings claims against each State defendant in their official capacities. The Section 1983 claims against these defendants should be dismissed because they are improper defendants[3].

First, Washington State is not a proper defendant in a § 1983 action. Such a claim may only be brought against "persons" acting under color of state law. 42 U.S.C. § 1983. The United States Supreme Court has made clear that states and state agencies are not "persons" subject to suit under § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). In addition, it is well established that under the Eleventh Amendment, a nonconsenting state is immune from suits brought in federal courts by its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The State of Washington has not waived its Eleventh Amendment immunity for federal civil rights actions. *See Whiteside v. State of Wash.*, 534 F.Supp. 774, 778 (E.D. Wash. 1982).

---

[3] Defendants interpret Plaintiff's Seventh Cause of Action, i.e., respondeat superior, as a claim pursuant to Section 1983. The Court agrees.

Similarly, the DOC is an agency and arm of the State of Washington, and SCCC is a facility run by the State of Washington's DOC. Neither DOC nor SCCC are "persons" for the purposes of Section 1983.

Further, officials acting in their official capacities are not "persons" and so are not subject to a suit for monetary relief under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Finally, in order to state a viable official-capacity claim, the Plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Even if Plaintiff named proper defendants in their official capacity, Plaintiff failed to allege that those defendants took an action (or failed to take action) pursuant to government policy or custom that violated plaintiff's constitutional rights.

Therefore, Plaintiff's Eighth Amendment and First Amendment claims against the State of Washington, DOC, SCCC, and the individually named State defendants in their official capacities should be dismissed with prejudice.

C.   Plaintiff's Eighth Amendment Claim against the State Defendants in Their Individual Capacities

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Under the Eighth Amendment, prison officials are required to provide prisoners with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [ (2) ] the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows they suffered from a serious medical need, they must then show the prison officials responded to the need with deliberate indifference. *See Farmer*, 511 U.S. at 834. Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

It is well established that a mere difference of opinion concerning proper medical care is not sufficient to establish deliberate indifference. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989). To prevail on an Eighth Amendment claim which involves choices between alternative courses of treatment, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances ... and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). A difference of opinion between a prisoner-patient and prison medical authorities concerning proper treatment likewise does not give rise to a claim under § 1983. *Franklin v. Oregon,* 662 F.2d 1337, 1344 (9th Cir.1981).

First, with respect to defendants Sinclair, Parris, Evans, Russell, Parker, Reno, Bohan, and Mainio, Plaintiff does not allege facts that would plausibly show each defendant personally participated. He alleges only that these defendants "knew of the situation" and "had the authority to ensure that Plaintiff was eating and receiving proper nourishment," but Plaintiff provided no evidence of those Defendants' knowledge of Plaintiff's "situation," or evidence to show that they were deliberately indifferent to Plaintiff's needs. *See* Dkt. 121 at 11. Plaintiff further alleges that he spoke with Secretary Sinclair on May 6, 2020 about his HSR, and Defendant Sinclair was "dismissive." Dkt. 21 at ¶77.

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights

deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The record contains no evidence that defendants Sinclair, Parris, Evans, Russell, Parker, Reno, Bohan, or Mainio personally participated in the alleged denial of Plaintiff's Eighth Amendment rights. Plaintiff's conclusory allegations are insufficient to defeat summary judgment. Accordingly, Plaintiff's Eighth Amendment claim against these Defendants should be dismissed.

With respect to "K. Taylor" and "T. Taylor," Plaintiff submitted two emails that Plaintiff's mother sent to each defendant separately regarding Plaintiff's HSR request. *See* Dkt. 121,at Exhibit F. In these emails, Plaintiff's mother expresses her concern over Plaintiff's neck pain and his alleged inability to eat meals comfortably. These emails, alone, do not demonstrate that defendants K. Taylor and T. Taylor personally participated in violating Plaintiff's Eighth Amendment rights. Plaintiff's Eighth Amendment claims against K. Taylor and T. Taylor should also be dismissed.

Similarly, Plaintiff alleges defendants Flynn and Fithian were notified of Plaintiff's complaints through emails from Plaintiff's mother. Plaintiff, however, failed to submit evidence of those emails. Plaintiff, in his response to his summary judgment motion, references an email either written to or from Flynn on January 22, 2020, but did not attach the email. *See* Dkt. 121, at 21. Plaintiff's allegations are conclusory, and fail to show how Defendant Flynn or Defendant Fithian personally participated in violating plaintiff's Eighth Amendment rights. Plaintiff's Eighth Amendment claims against Flynn and Fithian should be dismissed.

Plaintiff sent multiple Kiosk messages to Van Ogle, Burkett, Schreiber, and Jolly, informing them that his HSR had been wrongfully confiscated. None of those messages,

however, demonstrate that Defendants were deliberately indifferent to Plaintiff's medical needs. For instance, on September 14, 2019, Plaintiff asked for his HSR to be "straightened out as soon as possible." Dkt. 121, Exhibit J, at 116. Defendant Jolly responded that Plaintiff has no listed HSR pertaining to meals, and Plaintiff should contact medical for his HSR concerns. *Id.* Plaintiff sent a message to Burkett on March 6, 2020, requesting a "4 legged chair with back support" so that he can attend Passover in light of the meals HSR not being reissued. *See* Dkt. 121, Exhibit J, at 115. Defendant Burkett responded, "Schreiber is currently working on this request." In sum, the messages submitted by Plaintiff show that Defendants responded to Plaintiff's requests and attempted to direct him to the appropriate personnel to handle his requests. The Defendants' responses do not meet the deliberate indifference elements required to state a claim for an Eighth Amendment violation; thus, Plaintiff's Eight Amendment claim against these Defendants should be dismissed.

Next, Plaintiff claims that Defendants Haynes and Cardwell violated his Eighth Amendment rights when defendant Cardwell sent a Kiosk message on behalf of defendant Haynes informing Plaintiff that it is policy for Food Services to not accept photocopies of HSRs because offenders, in the past, have made their own HSRs. Neither defendant was accusing Plaintiff of forging or manipulating *his* HSR; rather Defendant Cardwell was simply informing Plaintiff of the policy and the reasoning behind it. Plaintiff failed to demonstrate how either Defendant Haynes or Cardwell violated his Eighth Amendment rights by sending the Kiosk message. Thus, Plaintiff's claim against Defendants Haynes and Cardwell should be dismissed.

Plaintiff further alleges defendants Helberg, Clift, and Montour inflicted "cruel and unusual punishment" on Plaintiff by confiscating his HSR on September 14, 2019.  "To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety". *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official therefore cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Plaintiff's encounter with Defendants Helberg, Clift, and Montour, in the dining hall, is insufficient to show that defendants had the requisite state of mind – that they actually drew the inference that a substantial risk of serious harm to plaintiff existed. Therefore, Plaintiff's claim against these Defendants should also be dismissed.

Finally, with respect to the three medical professional defendants, neither Herrington, Kennedy, nor Light, stated it was medically necessary for plaintiff to have an HSR that allowed him to eat his meals in his cell. Both Dr. Herrington and PA Light thought that long-term use of Plaintiff's neck brace could lead to spinal cord injury.

Dr. Herrington stated "Mr. Rogers was not prevented from sitting upright to eat or from moving without assistance by his neck condition." Dkt. 83 at ¶6. Plaintiff was seen on multiple occasions by each of these Defendants, as well as Dr. Young relating to his neck pain and request for a meals HSR, and in each circumstance Plaintiff was either examined directly, or his medical history was reviewed. Plaintiff ultimately had a

difference of opinion with the Defendants on how he should be able to consume his meals.

Plaintiff states in his affidavit that he lost approximately 20 pounds from being unable to eat in his cell. Dkt. 121, Attachment 1 at 25. He states that without the additional neck and back support, he would choke on food. He either ate ramen or did not eat. *But*, he was not restricted from going to the common hall and eating his meals with the general population, and it was not SCCC's policy to allow inmates to consume their meals in their cells. *See generally, Foster v. Redenius*, No. 06-CV-0792-BLW-MHW, 2009 WL 1212888, at *7 (E.D. Cal. May 4, 2009) ("Receipt of food may be contingent upon the prisoner following a prison policy that is reasonably related to mealtime safety, regardless of whether that policy is in written form."). An inmate who fails to follow a mealtime protocol may be reasonably understood as having rejected the food.

Plaintiff has failed to show that Defendants Herrington, Kennedy, or Light, violated his Eighth Amendment rights; summary judgment should, therefore, be granted.

D. <u>Plaintiff's First Amendment Claim Against the State Defendants in Their Individual Capacities</u>

Plaintiff claims that Defendants Herrington, Kenney, Helberg, Clift, Mountour, Light, Klemme, Schrieber, Dahne, Harder, Taylor, Parris, Evans, and Haynes, retaliated against him in violation of his First Amendment rights for filing grievances and internal complaints about his request for an HSR to eat in his cell.

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir.2012). Violations of this right are actionable under 42 U.S.C. § 1983. To prevail on a

First Amendment retaliation claim, a prisoner must prove that: (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took adverse action; (3) the adverse action was causally related to the protected conduct; (4) the adverse action had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did not advance a legitimate correctional interest. *Watison,* 668 F.3d at 1114–15.

While filing prison grievances and lawsuits is protected conduct, denial of a grievance, alone, does not amount to an adverse action. *See Dicey v. Hanks,* No. 2:14-cv-2018 JAM ACP, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015). Here, Plaintiff filed several grievances and kites complaining about Defendants' failure to allow him to eat in his cell due to his neck pain. Following each of his complaints, Plaintiff was informed that his request could not be accommodated, and he would have to eat in the common hall with the other inmates. Viewing the facts in light most favorable to Plaintiff, the non-moving party, the Court could draw an inference that the Defendants did take an adverse action, i.e., forcing Plaintiff to eat in the common hall even though he was in pain, in retaliation for filing grievances and kites.

To prevail on a retaliation claim, a plaintiff must further show that his protected activities were "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir.2009) (quotation and citation omitted). At the summary judgment stage, a plaintiff "need only put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent." *Brodheim,* 584 F.3d at 1271.

In this case, even if Plaintiff shows that Defendants took an adverse action against him, he presents no evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to the Defendants' intent. And Plaintiff does not provide any proof that Defendants' alleged conduct would chill or silence a person of ordinary firmness from future First Amendment activities such as discouraging the filing of future grievances. *Brodheim,* 584 F.3d at 1271 (quotation and citation omitted)[4].

Finally, Plaintiff has not alleged or presented evidence demonstrating that Defendants' alleged actions did not reasonably advance a legitimate correctional goal. *Id.,* 584 F.3d at 1271–72; *Watison,* 668 F.3d at 1115 (a defendant's actions are unrelated to a legitimate correctional goal when they are either "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution.").

When viewed in the light most favorable to Plaintiff, there is no genuine dispute of material fact that the handling of Plaintiff's grievances was not retaliatory in nature and reasonably related to legitimate correctional coals. Accordingly, Defendants motion for summary judgment on Plaintiff's retaliation claim should be granted.

E.  Plaintiff's ADA and Rehabilitation Claims Against SCCC, DOC, and State of Washington

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act ("RA"), as amended and codified in 29 U.S.C. § 701

---

[4] Plaintiff claims Defendant Harder retaliated against him when he submitted a kite requesting the HSR by filing a negative behavior log against Plaintiff. The negative behavior log, however, does not indicate who authored it. Further, even if Defendant Harder did in fact author the negative behavior log, Plaintiff did not demonstrate that the behavior log would chill or silence a person of ordinary firmness from future First Amendment activities.

et seq., prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity[5]. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to the services, programs, and activities provided for inmates by jails and prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-13 (1998).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). Determining whether a modification is reasonable (or even required) is necessarily a fact-specific inquiry, requiring analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the

---

[5] Because there is no significant difference between the substantive standards of the ADA and the Rehabilitation Act, the claims may be analyzed together. *See Martin v. Cal. Dep't of Veterans Affairs,* 560 F.3d 1042, 1047 n. 7 (9th Cir.2009).

program's standards." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910-11 (9th Cir. 2013) (citation and internal quotation marks omitted).

Furthermore, Plaintiff can only proceed to recover monetary damages, if he can demonstrate "intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). The deliberate indifference standard "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

Defendants agree that access to food services qualifies as a program or activity. Dkt. 80 at 18. Plaintiff, however, has not shown that he was denied access to food services. Plaintiff was never restricted from accessing his meals in the common hall; rather, he was denied permission to take his food *from* the common hall to his cell based on the medical providers' determination that it was not medically necessary. Furthermore, Plaintiff failed to show that Defendants were intentionally discriminatory against Plaintiff. Plaintiff's conclusory allegations are insufficient to defeat summary judgment on his ADA and RA claims. Defendants' motion for summary judgment should be granted.

F. <u>Plaintiff's State Law Claims</u>

Defendants argue that Plaintiff's state law claims (i.e., negligence, negligent infliction of emotional distress, and failure to supervise) should be dismissed due to Plaintiff's failure to comply with Washington's tort claim presentment statute.

Pursuant to RCW 4.92.100: "All claims against the state, or against the state's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortuous conduct, must be presented to the risk management division." That is, an

individual must first file a claim with the Office of Risk Management before filing a tort action against the State of Washington or against state employees. *Levy v. State*, 91 Wn. App. 934, 941, 957 P.2d 1272 (1998). Also, pursuant to RCW 4.92.110:

> No action subject to the claim filing requirements of RCW 4.92.100 shall be commenced against the state, or against any state officer, employee, or volunteer, acting in such capacity, for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim is presented to the office of risk management in the department of enterprise services.

These requirements " 'allow government entities time to investigate, evaluate, and settle claims.' " *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 968 (2014) (quoting *Medina v. Pub. Util. Dist. No. 1 of Benton Cnty.*, 147 Wn. 2d 303, 310 (2002)).

The RCW 4.92 claim-filing requirements are jurisdictional, mandatory, and operate as a condition precedent to a suit against government bodies and employees. *Mangaliman v. Washington State DOT*, C11-1591-RSM, 2014 WL 1255342, at *4 (W.D. Wash. Mar. 26, 2014) (citing *Levy*, 91 Wn. App. at 941-42). Courts strictly construe compliance with these statutory filing requirements. *Schoonover v. State*, 116 Wn. App. 171, 178 (2003) (citations omitted). It is also well settled that dismissal of a case is proper when a plaintiff fails to comply with the statutorily-mandated claim filing procedures. *Hyde v. University of Washington Medical Center*, 186 Wn. App. 926, 929. *See also Malone v. Huguenin*, C11-5643-RBL, 2012 WL 3877731, at *3 (W.D. Wash. Sept. 6, 2012) ("[Plaintiff's] state law claims must be dismissed. [Plaintiff] fails to meet a condition precedent: he failed to file a tort claim with the State prior to filing this complaint, as required by RCW 4.92.100.").

This remains true whether or not a plaintiff is aware of the pre-suit filing requirement. "No court has excused compliance with the presuit claim filing statutes

based on a lack of knowledge of the requirements. To the contrary, compliance with the claim filing procedure is mandatory even where the requirements might appear to be harsh and technical." *Levy v. State*, 91 Wn. App. 934, 942, 947, 957 P.2d 1272 (1998).

Here, Plaintiff concedes he submitted a late tort claim -- on April 27, 2023. Dkt. 121 at 17. This is over one year *after* the filing of his operative Complaint on January 22, 2022[6]. Dkt. 21. *See also* Dkt. 84 (Declaration of Jason Siems, State Risk Manager and Legal Counsel for Washington State Department of Enterprise Services) at ¶6 ("DES/ORM does not have any record of any tort claims presented to the State of Washington on or behalf of Daryl Rogers, including concerning the subjecting matter of the Complaint in Case No. 3:21-cv-05011.").

Submitting a tort claim after a lawsuit has commenced does not satisfy Washington's pre-suit notice requirement: "[T]he notice requirement in RCW 4.92.110 cannot be satisfied after a litigant is already inside the courthouse—it is a condition precedent to entering." *Pickard-Aguilar v. Washington State Emp. Sec. Dep't*, No. C20-1248-RSM-DWC, 2020 WL 8093446, at *2 (W.D. Wash. Dec. 18, 2020), *report and recommendation adopted*, 2021 WL 124334 (Jan. 13, 2021).

Plaintiff's failure to meet this jurisdictional condition precedent requires this Court to dismiss his state law claims. In addition, in finding Plaintiff's state law claims subject to dismissal on this basis, the Court need not and therefore does not address the additional arguments for dismissal included in the motion for summary judgment.

---

[6] Plaintiff initiated this action on January 4, 2021. The Court directed service of his complaint on January 26, 2022. Dkt. 21.

G. <u>Plaintiff's Claims against John and Jane Doe Defendants</u>

Finally, Plaintiff names several John and Jane Doe defendants in his complaint. While a plaintiff is allowed an opportunity to identify unknown defendants during the discovery period, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), that period lapsed, and Plaintiff had yet to identify these defendants. Accordingly, Plaintiff's claims against the John and Jane Doe defendants should be dismissed.

CONCLUSION

Based on the foregoing discussion, the Court recommends that the State Defendants' motion for summary judgment be GRANTED with respect to Plaintiff's claims. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on May 17, 2024, as noted in the caption.

Dated this 1st day of May, 2024.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge