UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DARYL ROGERS, | | Case No.: 21-cv-5011-BJR-TLF |
| | Plaintiff, | |
| v. | | ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING SUMMARY JUDGMENT TO STATE DEFENDANTS |
| WASHINGTON DEPARTMENT OF CORRECTIONS, *et al.* | | |
| | Defendants. | |

## I.     INTRODUCTION

Plaintiff Daryl Rogers brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against the State of Washington, Washington State Department of Corrections ("DOC"), Stafford Creek Corrections Center ("SCCC"), SCCC Facility Medical Director Ryan Herrington, M.D. ("Dr. Herrington"), SCCC Medical Assistant Harder ("Harder"), SCCC John Kenney, M.D. (Dr. Kenney), SCCC Assistant Cook Clift ("Clift"), SCCC Food Manager 1 Helberg ("Helberg"), SCCC Corrections Officer Montour ("Montour"), SCCC Custody Unit Supervisor Jolly ("Jolly"), SCCC Custody Program Manager Bohan ("Bohan"), SCCC Superintendent Haynes ("Haynes"), SCCC Superintendent Secretary Cardwell ("Cardwell"), SCCC ADA Coordinator Schreiber ("Schreiber"), SCCC Grievance Coordinator Dahne ("Dahne"), SCCC Health Services

1

Manager 2 K. Taylor ("K. Taylor"), SCCC Health Services Manager 2 T. Taylor ("T. Taylor"), DOC Grievance Program Manager Fredrick ("Fredrick"), SCCC Health Services Manager 2 Parris ("Parris"), SCCC Health Services Administrator Evans ("Evans"), SCCC Associate Superintendent Van Ogle ("Van Ogle"), SCCC Captain Mainio ("Mainio"), SCCC Captain Secretary Burkett ("Burkett"), DOC Secretary Stephen Sinclair ("Sinclair"), SCCC Certified Physician's Assistant Scott Light ("Light"), DOC ADA Compliance Manager Klemme ("Klemme"), DOC Deputy Director Russell ("Russell"), DOC Deputy Director Fithian ("Fithian"), SCCC Correctional Program Administrator Flynn ("Flynn"), DOC employee Parker ("Parker"), DOC employee Reno ("Reno"), and John and Jane Does. The foregoing Defendants are hereinafter collectively referred to as "the State Defendants". Plaintiff alleges claims under the First and Eighth Amendments and the ADA and Rehabilitation Act. He also brings a federal respondeat superior claim as well as state tort claims.

Currently before the Court is the Report and Recommendation of Magistrate Judge Theresa L. Fricke in which she recommends that this Court grant the State Defendants' motion for summary judgment. Dkt. No. 138. Having reviewed the Report and Recommendation, the summary judgment motion, response, and reply thereto, Plaintiff's objections to the Report and Recommendation, the response and reply to the objections, the record of the case, and the relevant legal authority, the Court will adopt the Report and Recommendation and grant summary judgment to the State Defendants. The reasoning for the Court's decision follows.

## II.      BACKGROUND

Plaintiff is currently an inmate at Monroe Correctional Complex-Twin Rivers ("Twin Rivers"). In August 2018, prior to his criminal conviction, Plaintiff sustained a neck injury in a motor vehicle accident. He was taken to the emergency room via ambulance where Plaintiff's

medical records indicate that "no serious pathology was diagnosed" but he was provided with a temporary soft-sided neck brace, which, according to Defendant Light (a PA-C at SCCC who treated Plaintiff) is the "standard treatment for a whiplash type injury[.]" Dkt. No. 87 at ¶ 4. Plaintiff alleges that, to date, his neck injury has not properly healed, and it causes him "extreme pain, muscle weakness, muscle spasms, nerve pain" as well as mobility issues. Dkt. No. 121 at 23. He further alleges that the injury causes his head to lay on his left shoulder, which prevents him from "eating normally due to severe intractable pain and choking[.]" *Id*. He asserts that the only way he can eat is to sit on his bunk propped up in the corner so that the two walls support his back and neck while he eats.

Plaintiff was initially housed in the Coyote Ridge Correction Center ("Coyote Ridge") where he was allowed to keep his neck brace. In May 2019, Plaintiff met with Shane Ririe, a PA-C at Coyote Ridge, and requested that he be given a chair with a high back because sitting on a stool in the cafeteria was difficult with his neck injury. Plaintiff alleges that Ririe suggest that he provide Plaintiff with a HSR to allow Plaintiff to eat his meals in his cell. Plaintiff claims that HRSs can only be give if medically necessary, so the fact that Ririe issued him a HSR means that Ririe determined it was medically necessary. Ririe, on the other hand, testified that he did not consider the HRS medically necessary, nor did he intend for it to be a permanent accommodation. Dkt. No. 88 at ¶ 10. Rather, Ririe testified that he agreed to provide Plaintiff with the accommodation "for a short period of time while" Ririe consulted with "specialist to identify the problems [Plaintiff] faced and how to best address those problems." *Id*. at ¶ 9. Ririe further testified that he "intended to reevaluate [Plaintiff] in hopes of creating a permanent plan after receiving further information from the specialist providers." *Id*. at ¶ 10. The HSR was reissued twice while Ririe continued to gather information.

In July 2019, Plaintiff was transferred to SCCC and Dr. Herrington, the SCCC Medical Director, terminated the HSR without first examining Plaintiff. Dr. Herrington testified that he terminated the HSR after he "reviewed [the] matter and determined that the in-cell HSR previously issued at Coyote Ridge [] was not medically necessary." Dkt. No. 83 at ¶ 10. According to Dr. Herrington, SCCC inmates are only allowed to consume meals in their cells when it is necessary to control infection disease, something that was not applicable to Plaintiff. He did offer to write a HSR for extended time to eat in the cafeteria, but Plaintiff declined the offer. Plaintiff and Dr. Herrington communicated regarding the HSR via multiple health service kites. It is important to note that while Plaintiff states in his affidavit in support of his opposition to the State Defendants' motion for summary judgment that he needed the HSR to prevent choking (in addition to alleviate pain), in the many health kites he sent to Dr. Herrington, he never raised a concern about choking. *See*, *e.g.*, Dkt. No. 121 at p. 42, Health Services Kite dated August 4, 2029 ("I will not be eating due to the pain."); p. 44 Health Services Kite dated August 13, 2019 ("The better option in terms of my pain level is taking my meals in my cell."); p. 45 Health Services Kite dated August 16, 2019 (same); p. 47 Health Services Kite dated February 28, 2020 ("[This] has [led] me to not eating for months due to the pain felt when sitting without back support.").

On September 12, 2019, another SCCC physician, Dr. Kenney, met with Plaintiff and re-issued the HSR. Dr. Kenney testified that he did not examine Plaintiff nor determine that the HSR was medically necessary; rather, he issued the HSR because it is his general practice when an inmate is transferred from another facility to SCCC to reissue any active HSR for the first three months after the transfer so that any existing accommodations remain in effect until the inmate is medically examined. Dr. Kenney further testified that in issuing the HSR, he was

unaware that Dr. Herrington had discontinued the HSR "because it was not medically necessary and could not be accommodated by the facility." Dkt. No. 86 at ¶ 10.

Plaintiff alleges that thereafter, when he attempted to take his meals back to his cell to eat, he was stopped by Defendant Clift who told him the HSR was invalid and that she had been instructed by Defendant Helberg to confiscate it. Plaintiff claims that this happened a second time when he attempted to take his meal back to his cell and this time Defendant Montour stopped him from leaving with his meal. Plaintiff then met with Dr. Kenney again on September 17 and the doctor explained to him "that custody officials had concerns about the HSR." *Id.* at ¶ 11. Dr. Kenney claims that Plaintiff told him that he could eat in the main cafeteria, so based on this assurance from Plaintiff, the doctor terminated the HSR. Plaintiff disputes that he told Dr. Kenney that he could eat in the cafeteria.

Thereafter, Plaintiff sent multiple kiosk messages to Defendants Haynes, Van Ogle, Schreiber, and Jolly alleging that his HSR had been wrongfully confiscated. On September 25, 2019, he filed an emergency grievance requesting that the HSR be reissued. The grievance was denied and on April 1 and 14, 2020, he appealed it to Levels II and III. Plaintiff alleges that his grievances and appeals took an abnormally long time to resolve and that during this time he "was eating a single top ramen some days and sometimes [he] was not eating at all for days at a time." Dkt. No. 121 at p. 25. He alleges that he lost around twenty pounds "had severe hunger pains, began to get headaches from not eating, started to have uncontrollable muscle spasms and stiffness through [his] body causing mobility issues, and had a general feeling of weakness due to not eating." *Id.*

Plaintiff was seen by Defendant Light, a PA-C at SCCC, on multiple occasions beginning in April 2020. Light testified that he became concerned that Plaintiff was still using the neck

brace because it was his belief that it had been only intended for temporary use after the traffic accident. Light further testified that he was concerned that the long-term use of the neck brace had result in weakness in Plaintiff's neck. Dr. Herrington also testified that it was his belief that Plaintiff's neck had "weakened because of his long-term use of a temporary neck brace to the point where [Plaintiff] was at risk of suffering a spinal cord injury were he to suddenly cease use of the neck brace." Dkt. No. 83 at ¶ 6. Light began working with the attending physician and a physical therapist to identify methods to correct the alignment of Plaintiff's neck. Light also recommended that Plaintiff be provided with a chair with back support to use during mealtimes in the cafeteria. When Light learned that there was a security concern that a chair could be used as a weapon, he recommended that Plaintiff be provided a wheelchair. However, Light testified that he was concerned that "use of a wheelchair for mobility could similarly cause loss of function and mobility due to disuse" as the neck brace had. Dkt. No. 87 at ¶ 9. Light further testified that he had the opportunity to observe Plaintiff on a video sitting on a standard DOC stool without a back speaking on the phone for approximately twenty minutes "so [he] had reason to believe that [Plaintiff] could sit for a significant period of time even without back support." *Id.* at ¶ 14.[1]

On May 26, 2020, Defendant Klemme, the ADA Compliance Manager at SCCC, granted Plaintiff the accommodation of using a wheelchair. Dkt. No. 121 at p. 61. The accommodation was approved for: "Wheel Chair [*sic*] use only for getting to dining and eating in dining. Not for use in living unit or other areas." *Id.* The SCCC Accommodation Review Committee approved the foregoing accommodation on May 27, 2020.

---

[1] Plaintiff alleges that eating and using the facility phones are "quite different" because he can use his arms to support his head and neck while using the phones, something that he is unable to do while eating. Dkt. No. 121 at p. 29.

6

Plaintiff alleges that on June 13, 2020, Defendants Jolly, Howard, and Arias took the wheelchair from him. Plaintiff alleges that on June 17, 2020, he fell and was taken to medical where he was examined by Danee Young, a SCCC physician. Dr. Young testified that Plaintiff advised her during this appointment that he was using the wheelchair to ambulate for all activities. She further testified that Plaintiff stated that he needed the wheelchair for back support at meals, but he did not require it for ambulation. Dr. Young stated that she became concerned about the risk of atrophy/disuse associated with continuous use of the wheelchair and, as such, removed the wheelchair accommodation and provided him with a seated, four-wheeled walker only.

Dr. Young saw Plaintiff again on July 16. She claims that he reported that the walker was helping with his mobility, that he had been walking more, and that he had improved neck flexion. However, Plaintiff again requested the use of a wheelchair because it provided greater support for his neck than the walker. He also reported that he needed it for back support during mealtime. Dr. Young refused to provide the wheelchair because of his "improvement in flexion in the month he had been using the walker, and the high risk for disuse atrophy." Dkt. No. 78 at ¶ 7.

Thereafter, in July and August 2020, Plaintiff filed several grievances with Defendant Dahne regarding the SCCC's staff and medical team's refusal to provide him with a HSR for meals. On October 4, 2019, Defendant Dahne, Grievance Coordinator at SCCC, denied the grievance. He stated that prior to denying the grievance, Plaintiff was interviewed and his medical chart was reviewed, and it was determined that it is not medically necessary for Plaintiff to eat his meals in his cell because he is able to get himself to the dining hall for meals. Dkt. No. 121 at 70. Plaintiff then attempted to appeal this grievance directly to Level III, which the SCCC

1    staff denied, and accepted at Level II instead. On January 16, 2020, the Health Services

2    Administrator denied Plaintiff's Level II appeal, again determining that it is not medically

3    necessary for Plaintiff to eat his meals in his cell. The denial was based in part on the fact that

4    Plaintiff could ambulate to the dining hall and because Plaintiff had been observed talking on the

5    phone while seated on a standard DOC stool without back support. Plaintiff claims that he then

6    attempted to appeal the grievance to Level III but never received a response. Defendants claim

7    that the Level III appeal was dismissed because Plaintiff failed to file a "re-write" of the appeal

8    when requested, a request that Plaintiff claims he never received.

9           Plaintiff was transferred to Airway Heights Corrections Center ("AHCC") in November

10   2022 where he claims that all inmates were eating in their cells. Plaintiff further alleges that in

11   December 2022 when AHCC inmates returned to eating in the main cafeteria, the AHCC Facility

12   Medical Director examined Plaintiff and issued him a HSR for eating meals in his cell for one

13   year. He was then transferred to Twin-Rivers where the HSR was honored. He further alleges

14   that in November 2023, the medical staff at Twin-Rivers reissued the HSR for another year.

15   Finally, he alleges that the DOC's Care Review Committee has since determined that the HSR is

16   medically necessary.

17                              III.    LEGAL STANDARD

18          Summary judgment is proper only if there is no genuine issue as to any material fact and

19   the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is

20   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

21   showing on an essential element of a claim in the case on which the nonmoving party has the

22   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

23   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

## IV.    DISCUSSION

### A.    The Report and Recommendation

The Report and Recommendation recommends the following: (1) Plaintiff's constitutional claims against the State of Washington, DOC, SCCC, and Defendants sued in their official capacities be dismissed because they are not proper defendants under 42 U.S.C. § 1983; (2) Plaintiff's Eighth Amendment claim against Defendants sued in their individual capacities be dismissed because Plaintiff failed to present evidence that these Defendants personally participated in violating his Eighth Amendment rights, were aware of a substantial risk to Plaintiff, or that the HSR to eat his meals in his cell was medically necessary; (3) Plaintiff's First Amendment claim be dismissed because Plaintiff failed to present evidence sufficient to create a genuine issue of material fact as to whether the handling of Plaintiff's grievances were retaliatory in nature or reasonably related to a legitimate correctional goals; (4) Plaintiff's ADA and RA claims should be dismissed because Plaintiff has not shown that he was denied access to food services; and (5) Plaintiff's state law claims must be dismissed for failure to comply with Washington's tort claim presentment statute.

### B.    Plaintiff's Objections

Plaintiff raises the following objections to the Report and Recommendation: (1) the Magistrate Judge employed the improper legal standard; (2) the Magistrate Judge erred in determining that the State of Washington, DOC, SCCC, and Defendants sued in their official

capacity cannot be sued under § 1983 because they did not raise an Eleventh Amendment defense until their reply brief in support of their motion for summary judgment; (3) the Magistrate Judge erred in recommending that Plaintiff's Eighth Amendment claim against the Defendants sued in their individual capacity be dismissed; (4) the Magistrate Judge erred in recommending that Plaintiff's First Amendment claim against the Defendants sued in their individual capacity be dismissed; (5) the Magistrate Judge failed to acknowledge two email sent by Plaintiff's mother to Defendants Flynn and Fithian; (6) the Magistrate Judge erred in recommending that this Court dismiss his ADA/RA claim; and (7) the Magistrate Judge erred in determining that he did not comply with the State of Washington tort claim presentment statute.

## C.    Analysis

A district court must conduct a *de novo* review of those portions of a magistrate judge's Report and Recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see also Rogers v. Clark County Corrections*, 2023 WL 4847002, *1 (W.D. Wash. July 28, 2023) citing Fed. R. Civ. P. 72(b)(3) (A district court "need only review parts of the magistrate judge's disposition that have been properly objected to."). A party properly objects when he or she files "specific written objections" to the Report and Recommendation. Fed. R. Civ. P. 72(b)(2). In contrast, general objections or summaries of arguments previously presented have the same effect as no objection at all since they do not focus the Court's attention on any specific issues for review. *Rogers*, 2023 WL 4847002, *1 (W.D. Wash. July 28, 2023) citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). The Court addresses each of Plaintiff's objections below.

Plaintiff raises a blanket objection to the Report and Recommendation, alleging that the Magistrate Judge employed "an improper legal standard" in resolving the State Defendants'

1    summary judgment motion because she made "all inferences in the [State Defendants'] favor."

2    Dkt. No. 139 at 1, 4. Plaintiff does not point to which specific inferences he objects; nor did the

3    Court find any incidents in which the Magistrate Judge improperly viewed the evidence in a light

4    most favorable to the State Defendants. Therefore, the Court overrules Plaintiff's first objection.

5         Plaintiff next objects to the Magistrate Judge's recommendation that Plaintiff's

6    constitutional claims against the State of Washington, DOC, SCCC, and the Defendants sued in

7    their official capacities be dismissed because they are not proper defendants under 42 U.S.C. §

8    1983. Plaintiff alleges that these Defendants waived this argument because they waited until their

9    reply brief to raise this Eleventh Amendment immunity defense. Plaintiff is incorrect. The State

10   Defendants asserted an Eleventh Amendment immunity defense in their affirmative defenses to

11   his complaint as well in their opening brief in support of their summary judgment motion. *See*

12   Dkt. Nos. 58 and 80. The Court overrules Plaintiff's second objection.

13        The Court overrules Plaintiff's third objection related to his Eighth Amendment claim

14   because the objection simply reiterates the arguments raised before the Magistrate Judge. The

15   Court has reviewed the record evidence and agrees with the Magistrate Judge that Plaintiff has

16   failed to present evidence sufficient to create a genuine issue of material fact regarding whether

17   the individual defendants violated Plaintiff's constitutional rights. With regarding this his Eighth

18   Amendment claim, Plaintiff failed to present any evidence that it is medically necessary for him

19   to eat his meals in his cell. On the other hand, Plaintiff's condition was assessed by multiple

20   SCCC medical providers, both medical doctors and physician's assistants, who determined that

21   Plaintiff did not have a medical need to eat meals in his cell. The SCCC staff attempted several

22   measures to accommodate Plaintiff's neck pain (while balancing the safety and administrative

23   needs of the penal facility as well as Plaintiff's long-term health) including offering him extra

1   time to eat, providing him with a wheelchair, a walker, and a cervical neck pillow, as well as

2   prescribing neck exercises and anti-inflammatory medication, but Plaintiff did not like these

3   measures. At best, Plaintiff disagrees with the medical providers' treatment of his neck issue, but

4   such disagreement does not constitute a deliberate indifference to a serious medical need. *See*,

5   *e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Simply put, Plaintiff has presented

6   no evidence that the State Defendants were deliberately indifferent to a serious medical need.

7       The Court overrules Plaintiff's fourth objection relating to his First Amendment claim.

8   The Magistrate Judge recommended that this Court dismiss Plaintiff's First Amendment claim

9   because Plaintiff presented no evidence that the State Defendants acted with a retaliatory motive

10  in denying his grievances, that the Defendants' alleged conduct would chill or silence a person of

11  ordinary firmness from filing future grievances, or that Defendants' actions did not reasonably

12  advance a legitimate correctional goal. Plaintiff's objection to this recommendation simply

13  reiterates his claim that the State Defendants allegedly delayed his grievances, requested

14  rewrites, and did not inform him of the rewrite requests. He claims that such actions "show[]

15  Defendant's [*sic*] actions were not only adverse, but also retaliatory and did not advance

16  penological interest." Dkt. No. 139 at 13. As stated above, such general objections or summaries

17  of arguments previously presented do not constitute a proper objection to the Magistrate Judge's

18  disposition and do not need to be addressed by this Court. Therefore, the Court declines to do so

19  here.

20      Next, Plaintiff objects that Magistrate Judge "overlooked" emails sent by his mother to

21  Defendants Flynn and Fithian. Dkt. No. 139 at 9. He claims that the emails were "submitted

22  along with [his] Response to Defendant[s'] motion for summary judgment." *Id.* This Court has

23  reviewed each of the exhibits attached to Plaintiff's opposition to the summary judgment motion

and no such emails are in the documents. Therefore, the Court overrules Plaintiff's fifth objection.

The Court also overrules Plaintiff's sixth objection to the Report and Recommendation. In this objection, Plaintiff alleges that the Magistrate Judge erred when she determined that he was not "denied access to food in the dining hall in violation of the Americans with Disabilities Act and Rehabilitation Act." Dkt. No. 139 at 14. Once again, Plaintiff is mistaken. Here there is no claim that Plaintiff was denied access to food in the dining hall; rather, Plaintiff alleges that he was denied the right to eat in his cell.

Lastly, the Court overrules Plaintiff's final objection to the dismissal of his state tort claims because he failed to comply with Washington's tort claim presentment act. The Court overrules this objection because Plaintiff concedes that he did not timely file a tort law claim with the Office of Risk Management.

## V.   CONCLUSION

For the foregoing reasons, the Court HEREBY RULES as follows:

(1)   The Report and Recommendation (Dkt. No. 138) is ADOPTED;

(2)   Plaintiff's Objections (Dkt. No. 139) are OVERRULED;

(3)   The Court GRANTS State Defendants' motion for summary judgment (Dkt. No. 80);

(4)   The case is DISMISSED with prejudice; and

//

//

//

1    (5)    The Clerk is respectfully directed to send copies of this Order to the parties and to

2  the Honorable Theresa L. Fricke.

3    Dated this 12th day of July, 2024.

Barbara Jacobs Rothstein
U.S. District Court Judge